**David UNTERBURGER and American Mutual Insurance Companies, Appellees,**

v.

**The SNOW COMPANY, INC., Appellant,**

v.

**DARWIN FARMERS CO–OP ELEVATOR COMPANY, Appellee.**

**No. 79–1869.**

United States Court of Appeals, Eighth Circuit.

Submitted April 18, 1980.

Decided Sept. 10, 1980.

---

Warren P. Eustis, Van Eps & Gilmore, Minneapolis, Minn. (argued), and Andrew T. Shern, Minneapolis, Minn., on brief, for appellant.

R. H. Schneider, Schneider & Neeser, Willmar, Minn. (argued), and Boyd Beccue, Willmar, Minn., on brief, for appellee.

Before BRIGHT and ROSS, Circuit Judges, and SCHATZ, District Judge.*

BRIGHT, Circuit Judge.

David Unterburger brought this products liability action against The Snow Company, Inc. (Snowco), to recover damages for injuries he suffered in a grain auger accident. Snowco, the manufacturer of the grain auger, filed a third–party complaint against Unterburger's employer, Darwin Farmers Co–op Elevator Company (Darwin), to recover contribution and indemnity. The district court[1] submitted the case to the jury on theories of strict liability and negligence. The jury found against Snowco on both theories and determined that Darwin was also negligent. Snowco now appeals, arguing that the district court erred

1) in admitting evidence of subsequent remedial measures;

2) in refusing to instruct the jury on product modification or alteration by Darwin;

3) in refusing to instruct the jury on assumption of risk; and

4) in revising the jury's answer to a question of the special verdict form.[2]

Having reviewed the record, we affirm.

I. *Background.*

Unterburger was injured when his left arm became entangled in the main drive shaft of a grain auger manufactured by Snowco. A grain auger is a device used to move grain short distances for storage or shipment. It elevates the grain through a long steel tube by means of a rotating spiral. The Snowco auger in this case had a tube length of forty–five feet and a tube diameter of eight inches. It was a two–stage device, with a short intake tube at the lower end dropping the grain into a longer tube at the upper end. The upper–stage tube was connected immediately below and slightly to the right of the lower–stage tube.

This two–stage arrangement obviated having a drive shaft running the whole length of the auger. Instead, the upper–stage tube was driven from the bottom by a smooth main drive shaft, some twenty inches in length; a shorter shaft transferred the power from the main drive shaft to the lower–stage tube. The main drive shaft extended from a gear case located immediately beneath the lower–stage tube to the closed bottom of the upper–stage tube. A short sleeve–type metal coupling secured to the shaft by three bolts connected the gear case to the main drive shaft.

---

* ALBERT G. SCHATZ, United States District Judge for the District of Nebraska, sitting by designation.

1. The Honorable Earl R. Larson, United States Senior District Judge for the District of Minnesota.

2. Snowco also contends that the district court erred in denying as untimely its motion for new trial. Snowco contends that the court had jurisdiction because the motion was made within 10 days of the amended judgment. It is unnecessary to address this issue because the issues raised on appeal are identical to those argued in the motion for a new trial, with the exception of Snowco's claim in its motion that the evidence was insufficient to support the jury's verdict. This last claim is without merit.

The main drive shaft, which was located approximately five feet off the ground, revolved at 600 r. p. m.

Darwin used an electric motor to drive its auger. A switch and fuse box were mounted on the auger frame. Power was transferred to the gear box by means of a drive–belt and pulley located on the opposite side of the gear box from the switch. A lever located two feet below the main shaft could be used to adjust the tension on the belt while the motor was running.

On January 13, 1976, Unterburger was helping Carl Hoppe, manager of Darwin, load grain from a bin at Darwin's elevator into a truck. Grain clogged the auger, causing an electrical outage. After an electrician repaired the outage, Unterburger and Hoppe attempted to put the auger back into operation. The exact sequence of events preceding the accident is unclear. Both Hoppe and Unterburger stood on the side of the grain auger where the fuse box and power switch were located. Both denied turning on the power to the auger. In any event, Unterburger's fingers came into contact with moving parts, drawing his arm in so that it became entangled with the lower end of the uncovered main drive shaft. Unterburger's arm had to be amputated just below the elbow. He was eventually fitted with a prosthesis.

Darwin had purchased its auger from Lindsay Brothers of Minneapolis (Lindsay) on December 31, 1968. Lindsay is a Snowco distributor and assembles augers from component parts forwarded by Snowco. Lindsay took delivery from Snowco in April of 1969; the date of delivery to Darwin is not clear from the record.

Snowco modified the design of its forty–five foot auger in late 1967 or early 1968. On the older model, the main drive shaft coupled directly to the upper auger by means of a rigid metal coupler. In the later model, Snowco replaced the rigid upper coupler with a flexible sprocket and chain coupler and provided partial guards on the flexible upper coupler and the rigid lower coupler. In both models, Snowco provided guards over the pulley and drive–belt mechanism, but in neither model did it provide guards over the main drive shaft.

It became evident at trial that none of the parties knew which model of grain auger had been delivered to Darwin. Although a search through Darwin's records revealed that it had been provided with an "Instructions and Parts List" effective November 1, 1966, illustrating the older model (plaintiff's exhibit 16), there was testimony that the parts list effective December 1, 1968, illustrating the newer model (plaintiff's exhibit 14), more accurately described the Darwin auger. Both exhibits were received into evidence. The Darwin auger had a sprocket and chain upper coupler and a rigid lower coupler. One of the bolts in this rigid coupler was one–half inch longer than the two–inch length prescribed by both parts lists. No guards or shields appeared over either coupler, nor over the pulley and drive–belt mechanism. While witnesses testified that Darwin had removed the pulley and drive–belt guard, there was no testimony showing whether the coupler shields had been removed or had ever been provided. Snowco's vice–president testified that Snowco had continued to sell the older model after the design modification and that the flexible upper coupler could have been substituted on the older model. This witness stated, however, that partial guards would have been included in the sale of the flexible upper coupler.

Unterburger's complaint alleged negligence, breach of warranty, and strict liability. He claimed that Snowco failed to guard the drive shaft properly and failed to provide adequate warnings and instructions for the use of the auger. Snowco filed a third–party complaint against Darwin, alleging that Darwin failed to supervise Unterburger adequately and failed to provide a safe workplace.

In its special verdict the jury found Unterburger's damages to be $220,800 and apportioned fault as follows: Snowco—fifty percent; Darwin—forty percent; and Unterburger—ten percent. While finding that Unterburger was negligent, the jury answered "no" to the question asking

whether plaintiff's negligence was a direct cause of the accident.[3] The district court changed this answer to "yes."

On August 21, 1979, the court entered judgment against Snowco in the amount of $110,400 and against Darwin in the amount of $88,320. Pursuant to plaintiff's motions and arguments heard on September 11, 1979, the court amended the judgment on September 12, 1979, assessing damages of $198,720 against Snowco and awarding Snowco $70,860.15 in contribution from Darwin. This assessment of damages is not in question on this appeal.

## II. *Liability Issues.*

### A. *Subsequent Remedial Measures.*

Snowco argues that the district court committed prejudicial error by failing to limit the evidence and testimony regarding plaintiff's exhibit 14, the instruction and parts list effective December 1, 1968, that illustrated the modified Snowco auger. Snowco contends that this exhibit was evidence of a subsequent remedial measure, inadmissible under Fed.R.Evid. 407, and that the admission of the exhibit confused the jury concerning the model of auger delivered to Darwin.

■ This argument lacks merit. As the district court noted at trial, Fed.R.Evid. 407 does not apply to actions based on strict liability; hence this evidence was admissible under the strict liability count. *See Farner v. Paccar, Inc.,* 562 F.2d 518, 528 (8th Cir. 1977); *Robbins v. Farmers Union Grain Terminal Ass'n,* 552 F.2d 788, 793 (8th

Cir. 1977). The district court offered to give an instruction limiting the evidence to the strict liability claim but defense counsel declined, commenting that such an instruction would probably only confuse the jury. Counsel cannot now be heard to complain about admission of the evidence.

■ We note, moreover, that exhibit 14 was also admissible on the negligence count. The record reveals that there was a genuine issue of fact as to which model of grain auger was delivered to Darwin and involved in the accident. The exhibit in question, therefore, may have accurately described the Darwin auger, rather than evidencing a subsequent design modification enhancing the auger's safety.[4]

### B. *Product Modification or Alteration.*

■ The district court refused Snowco's request to instruct the jury on product modification or alteration by Darwin.[5] After viewing the record, we conclude that the failure to give this instruction does not constitute reversible error.

A plaintiff in a strict liability case is required to show that the product "is expected to and does reach the user or consumer without substantial change in the condition in which it is sold." Restatement (Second) of Torts § 402A(1)(b) (1965). *See Magnuson v. Rupp Manufacturing, Inc.,* 285 Minn. 32, 171 N.W.2d 201, 208 (1969); *McCormack v. Hankscraft Co.,* 278 Minn. 322, 154 N.W.2d 488 (1969). The district

---

3. In their briefs, Snowco and Unterburger both state that the jury left this question unanswered. Our review of the record reveals, however, that the jury answered "no" to this question. *See* note 8 *infra.*

4. Admittedly, the admission of both exhibits 14 and 16 may have confused the jury. Part of the confusion, however, was due to the manner in which the exhibits were handled. On the second day of trial Unterburger's counsel offered into evidence plaintiff's exhibit 14 as the model involved in the accident, apparently because this list describing the later model had been supplied by the defendants in response to a discovery request. Snowco's attorney stipulated to its admission, unaware of the model

changes in 1967–1968. The following day plaintiff's exhibit 16 illustrating the earlier model was introduced into evidence. Snowco agreed to stipulate to exhibit 16 but urged the court to withdraw exhibit 14, which the court refused to do. Snowco requested the court to limit testimony concerning exhibit 14, but questioned its own witnesses concerning both exhibits.

5. Snowco requested the following instruction:
    If an employer or owner of a product modifies such product and thereby enhances the defect, such employer or owner is liable for such injuries resulting therefrom.

court in this case instructed the jury that Snowco could be found strictly liable only if the jury found that the auger was defective when it left the hands or control of Snowco and that the defect directly caused Unterburger's injuries.[6] Snowco contends, however, that a special instruction on substantial change was required because the evidence showed that Darwin removed a guard shielding the pulley and drive–belt mechanism and used an oversized bolt in the rigid coupler on the lower end of the main drive shaft. In our view, this evidence was insufficient to raise the issue of substantial change.

Unterburger claimed that Snowco's auger was defective because it lacked shields over the entire drive shaft. Snowco presented no evidence showing that Unterburger's arm became entangled in the pulley and drive–belt mechanism or that Darwin removed shields over the drive shaft around which Unterburger's arm became entangled. While Snowco presented testimony showing that an oversized bolt presented an additional hazard to an operator, the evidence did not show that the oversized bolt in fact caused the accident. Unterburger's expert witness testified that, if not properly shielded, the lower coupler with standardized bolts created an unreasonable hazard for the auger's operator. Under these circumstances, a special instruction on substantial change was not required as a matter of law.

We hold, moreover, that the failure to give an instruction on substantial change did not prejudice the appellant in light of the instructions as a whole. Under the instructions given, the jury could consider Snowco's arguments that the auger was not

defective when it left its control but became defective after Darwin's modifications, and that any changes made by Darwin constituted negligence which caused Unterburger's accident.

### C. Assumption of Risk.

The district court refused Snowco's request to instruct the jury on plaintiff's assumption of risk. Our review of the record indicates that a special instruction on assumption of risk was not required.

■ In Minnesota assumption of risk is not a separate and complete defense; rather, it is compared with the defendant's strict liability or negligence. See Busch v. Busch Construction, Inc., 262 N.W.2d 377, 394 (Minn.1977) (assumption of risk computed with strict liability); Lambertson v. Cincinnati Corp., 257 N.W.2d 679, 683 (Minn. 1977) (assumption of risk compared with negligence).

■ Relying on Busch v. Busch Construction, Inc., supra, Snowco contends that a special instruction on assumption of risk was required in this case because there was credible evidence from which the jury could reasonably conclude that the plaintiff voluntarily exposed himself to a known and appreciated risk.[7] In Lambertson v. Cincinnati Corp., supra, 257 N.W.2d at 683, the Minnesota Supreme Court held that a manufacturer of a press brake was not entitled to an instruction on assumption of risk when the evidence showed that the plaintiff reached through the machine without knowing that his coemployee's foot was still on the pedal or that the machine could double cycle without stopping. In this case,

---

**6.** The court also required the jury to make specific findings on these issues in its special verdict form. See note 8 infra.

**7.** The accepted instruction in Minnesota on the issue of plaintiff's assumption of risk states:
  "Assumption of risk is *voluntarily* placing (oneself) (one's property) in a position to chance known hazards. To find that a person assumed the risk you must find:
  "1. That he had knowledge of the risk.

  "2. That he appreciated the risk.
  "3. That he had a choice to avoid the risk or chance it and voluntarily chose to chance it."
[*Lambertson v. Cincinnati Corp., supra,* 257 N.W.2d at 683, *quoting* 4 Hetland & Adamson, Minnesota Practice, Jury Instruction Guides (2d ed.), Instruction 135S (emphasis supplied).]

while Unterburger was aware of the potential danger of the auger's drive shaft, there was no showing that he knew that the shaft would begin to turn while his fingers were in close contact with it. Thus, the court did not err in refusing to instruct the jury on assumption of risk.

In addition, we note that even though a special instruction on assumption of risk was not given, Snowco had the opportunity to argue and present testimony concerning Unterburger's negligence. Evidently, the jury considered Snowco's contention in finding Unterburger ten percent at fault.

### D. Revision of Jury's Answer to Special Verdict Question.

█ Snowco's final argument on appeal is that the trial court erred in supplying an affirmative response to the question of whether the plaintiff's negligence was a direct cause of his accident.[8] We hold that the trial court did not err.

If the district court could find as a matter of law that the plaintiff's negligence as determined by the jury was a direct cause of his injuries, its action in revising the jury's answer was proper. *See Orwick v. Belshan*, 304 Minn. 338, 231 N.W.2d 90, 94–95 (1975). Given the record and the fact that the jury found Unterburger to be negligent and ten percent at fault, we hold that the district court did not err in revising the jury's response. We believe, moreover, that it is highly unlikely that the court's action prejudiced Snowco, for a "no" answer would serve to increase the damages assessed against Snowco.

Affirmed.

---

8. The special verdict form as completed by the jury reads as follows:

1. When the grain auger left The Snow Company, was it in a defective condition unreasonably dangerous to the plaintiff?
   Answer: Yes
2. If your answer to Question No. 1 is "yes," then answer this question: Was such a defect a direct cause of the accident and plaintiff's injuries?
   Answer: Yes
3. Was The Snow Company negligent?
   Answer: Yes
4. If your answer to Question No. 3 is "yes," then answer this question: Was The Snow Company's negligence a direct cause of the accident and injuries to plaintiff?
   Answer: Yes
5. Was third party defendant Darwin Farmers Co-op Elevator Company negligent?
   Answer: Yes
6. If your answer to Question No. 5 is "yes," then answer this question: Was the Darwin Farmers Co-op Elevator Company's negligence a direct cause of the accident and injuries to plaintiff?
   Answer: Yes
7. Was plaintiff Unterburger negligent?
   Answer: Yes

8. If your answer to Question No. 7 is "yes," then answer this question: Was plaintiff Unterburger's negligence a direct cause of the accident and the injuries he suffered?
   Answer: No
9. If your answer to either or both of Questions No. 2 and No. 4 is "yes," and your answer to either or both of Questions No. 6 and No. 8 is "yes," then answer the following:
   Taking 100% as the total fault causing the accident and injuries, what percentage of the total fault causing the accident and injuries do you attribute to:

| | |
|---|---|
| The Snow Company, Inc. | 50% |
| Darwin Farmers Co-op Elevator Company | 40% |
| David Unterburger | 10% |
| Total | 100% |

(If you find that a party has no fault in causing the accident, then attribute zero percentage of the fault to that party.)
10. *Regardless* of how you answered the previous questions, answer this question:
   What sum of money will reasonably compensate plaintiff Unterburger for his claimed injury and damage?
   Two hundred twenty thousand Eight hundred dollars ($220,800.00)