The LACKAWANNA LEATHER COM-
PANY, Plaintiff-Appellee-Cross
Appellant,

v.

MARTIN & STEWART, LTD., Defend-
ant-Appellant-Cross Appellee.

Nos. 82–2221, 82–2264.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 10, 1983.

Decided March 30, 1984.

Rehearing Denied May 2, 1984.

Robert L. Berry, Kennedy, Holland, De-Lacy & Svoboda, Omaha, Neb., for plaintiff-appellee-cross appellant.

William L. Edmonds, Carter, Sar & Edmonds, Sioux City, Iowa, for defendant-appellant-cross appellee.

Before BRIGHT, JOHN R. GIBSON and FAGG, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Martin & Stewart, Ltd., appeals from a judgment in favor of Lackawanna Leather Company resulting from damaged cattle hides purchased by Lackawanna from Martin & Stewart. Martin & Stewart allege that the verdict was not supported by sufficient evidence and that the trial court erroneously instructed the jury. Lackawanna cross-appeals from the district court's order denying it prejudgment interest. We affirm the judgment of the district court.[1]

Lackawanna, a manufacturer of upholstery leather, purchased two truckloads of cattle hides from Great Plains Processing, a hide supplier partly owned by Martin & Stewart. The first truckload, containing 973 hides, was delivered on August 1, 1979, and was stored in the Lackawanna plant. The second, containing 930 hides, was delivered on August 9 and was stored in a separate tin warehouse. Upon delivery, a small number of the hides were visually inspected by Lackawanna employees for excessive water, dirtiness, foul odor or "anything crawling." No such damage was discovered. Lackawanna paid Martin & Stewart $95,212.31 for the hides plus freight charges.

Lackawanna began processing the hides on September 26. Four hundred hides from the August 1 shipment first had the salt and hair chemically removed. They were then sorted and split. This splitting process revealed the hide damage. Of the one hundred forty-four hides that were split, ninety-four were found to have grain damage. Subsequent inspection revealed that about two-thirds of the entire August 1 shipment was found to have similar damage. Lackawanna and Martin & Stewart personnel initially concluded that the damage was due to excessive water in the hides, and the second truckload was returned to Great Plains on October 2 to be rebrined. On October 9, two shipments of hides received by Lackawanna from Iowa Beef Processors (IBP) were rejected because hide beetles were discovered. Shortly after the IBP delivery, beetles were discovered for the first time in Lackawanna's tin warehouse. At the same time, Lackawanna received a laboratory report stating that the hide damage resulted not from water but from beetles. On October 16,

1. The Honorable C. Arlen Beam, United States District Judge for the District of Nebraska.

one hundred thirty-five of the rebrined hides were returned to Lackawanna from Great Plains. Upon removal of the hair, the same type and extent of damage previously detected was discovered. On October 24, Lackawanna formally notified Martin & Stewart that the hides were defective due to hide beetle damage. The damaged hides were ultimately resold to Martin & Stewart for $20,000.00.

Lackawanna brought this action against Martin & Stewart in January, 1980. The chief issue at trial was whether the hide damage existed at the time of delivery or occurred while the hides were stored at the Lackawanna facility. The case was tried to a jury on the alternative theories of revocation of acceptance and breach of warranties. After the jury returned a verdict in favor of Lackawanna, the district court denied Martin & Stewart's motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial.

## I.

Martin & Stewart first argue that the verdict was not supported by legally sufficient evidence of revocation of acceptance or breach of warranties. It claims that Lackawanna produced no direct evidence of beetle infestation at the time the hides were delivered, and therefore relied exclusively on circumstantial evidence to infer the existence of predelivery damage. Martin & Stewart assert that when circumstantial evidence forms the sole basis for the verdict, Nebraska law requires that the circumstances be such that the conclusion reached by the jury is the only one that can fairly and reasonably be drawn. As it believes that the inference of post-delivery damage to be equally plausible, Martin & Stewart argue that the evidence was insufficient to support the verdict.

■ Martin & Stewart characterize the verdict as one based on circumstantial evidence. It argues that the evidence directly proved a number of facts, but still required the jury to infer the ultimate issue—whether the hides were damaged before receipt. However, expert witnesses testified that the hides were damaged before receipt. This was opinion evidence on the ultimate issue, and the test for circumstantial evidence was therefore inapplicable. *Freemont Farmers Union Coop. Ass'n v. City of Freemont,* 179 Neb. 576, 139 N.W.2d 369 (1966).[2] The essence of Martin & Stewart's argument concerns the probative value of Lackawanna's expert testimony, the assessment of which is the jury's function. *McKnelly v. Sperry Corp.,* 642 F.2d 1101 (8th Cir.1981); *Doyle v. Union Ins. Co.,* 202 Neb. 599, 277 N.W.2d 36 (1979). We therefore apply the general test governing our review of the sufficiency of the evidence.

■ An appeal from a motion for judgment notwithstanding the verdict is reviewed under the same standard as a directed verdict. *Compton v. United States,* 377 F.2d 408, 411 (8th Cir.1967). That standard requires that we view the evidence in a light most favorable to the non-moving party. *Decker-Ruhl Ford Sales, Inc. v. Ford Motor Credit Co.,* 523 F.2d 833, 836 (8th Cir.1975). In so viewing the evidence, we must:

(1) resolve direct factual conflicts in favor of the nonmovant, (2) assume as true all facts supporting the nonmovant which the evidence tended to prove, (3) give the nonmovant the benefit of all reasonable inferences, and (4) deny the motion if the evidence so viewed would allow reasonable jurors to differ as to the conclusions that could be drawn.

*Dace v. ACF Industries, Inc.,* 722 F.2d 374, 375 (8th Cir.1983). This standard is substantially similar to that existing under Nebraska law. *Barclay v. Burlington Northern, Inc.,* 536 F.2d 263, 267 (8th Cir. 1976); *Farmer's Coop. Elevator Ass'n Non-Stock v. Strand,* 382 F.2d 224, 228

**2.** The test for the sufficiency of circumstantial evidence is the same under federal and Nebraska law. *Wray M. Scott Co. v. Daigle,* 309 F.2d 105 (8th Cir.1962).

(8th Cir.), *cert. denied*, 389 U.S. 1014, 88 S.Ct. 589, 19 L.Ed.2d 659 (1967).[3]

■ Applying the above standard, we cannot say that the verdict in favor of Lackawanna was unsupported by sufficient evidence. The evidence showed that of fifty thousand hides stored at Lackawanna, only Martin & Stewart hides were damaged in this manner. Although beetles were found in the tin warehouse which housed the August 9 shipment of hides before they were returned for rebrining, other hides stored there for longer periods did not suffer any damage. Experts testified that the hide damage was such that live beetles, discarded larvae skins and fecal matter should have been evident upon visual inspection. None were discovered. Experts also testified that the eating pattern indicated that the damage occurred while the hides were folded hair in, although they were delivered to Lackawanna and remained folded hair out. In light of this evidence, we cannot conclude that, as a matter of law, the damage occurred after delivery, and therefore the district court did not err in denying the motion for directed verdict.

## II.

■ Martin & Stewart next allege three errors arising from the trial court's instructions to the jury concerning the elements of revocation of acceptance and breach of warranty. While state law determines the substance of jury instructions in a diversity action, the granting or denying of such instructions is controlled by federal law. *Hrzenak v. White-Westinghouse Appliance Co.*, 682 F.2d 714, 719 (8th Cir.1982).

■ Parties are entitled to have their theory of the case presented to the jury if "legally correct, supported by the evidence

and brought to the court's attention in a timely request." *Board of Water Works Trustees of Des Moines v. Alvord, Burdick & Howson, Inc.*, 706 F.2d 820, 823 (8th Cir.1983). A litigant is not, however, entitled "to have the jury instructed in any particular language, so long as the jurors understand the issues and are not misled." *Stineman v. Fontbonne College*, 664 F.2d 1082, 1087 (8th Cir.1981). While it is error to instruct the jury on matters on which there is no evidence, *Bartak v. Bell-Galyardt & Wells, Inc.*, 629 F.2d 523, 528 (8th Cir.1980), a district judge is given broad discretion in framing the instruction, and will not be disturbed on appeal if "the entire charge fairly and adequately contains the law applicable to the case...." *Board of Water Works Trustees*, 706 F.2d at 823. If this standard is met, technical imperfections or a lack of perfect clarity will not render the charge erroneous. *Tribble v. Westinghouse Electric Corp.*, 669 F.2d 1193, 1197 (8th Cir.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 1767, 76 L.Ed.2d 342 (1983).

## A.

■ Under the Nebraska Commercial Code, "[r]evocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it...." Neb.Rev.Stat. ch. 91 § 2-608(2) (Reissue 1980). The two truckloads of hides were delivered to Lackawanna on August 1 and August 9. Acceptance was not revoked until October 24. In support of its assertion that Lackawanna did not revoke "within a reasonable time," Martin & Stewart introduced in evidence a booklet entitled *Trade Practice for Proper Cattle Hide Delivery*. The booklet, issued by hide buyers, states that inspection prac-

---

**3.** Some Nebraska cases, while in agreement with the federal standard concerning how the evidence should be viewed, employ somewhat different language and state that after the evidence is so viewed, the jury's verdict must be upheld unless "clearly wrong." *Lockhart v. Continental Cheese*, 203 Neb. 331, 278 N.W.2d 604 (1979). We do not view this as significantly different from the federal "unless reasonable jurors could not differ" standard. When the

federal and state standards are substantially similar, we have held both that the federal, *Farner v. Paccar, Inc.*, 562 F.2d 518, 522 (8th Cir.1977), and the state, *McIntyre v. Everest & Jennings, Inc.*, 575 F.2d 155, 158 (8th Cir.), *cert. denied*, 439 U.S. 864, 99 S.Ct. 187, 58 L.Ed.2d 173 (1978), test should apply. Obviously, a debate over which standard should apply when the two are substantially similar is inconsequential.

tices should include "[a] random sample inspection [of the hides] ... within five days after the unloading of the carrier." Based on this evidence of trade practice, Martin & Stewart requested an instruction that trade practice may be considered "in determining whether the actions claimed by Lackawanna were timely or proper." The trial judge declined to adopt this instruction, and instead charged the jury that "[t]he law recognizes and approves the use of trade custom and practice [in the buying, selling and storage of hides] in commercial transactions such as are involved in this case." Martin & Stewart allege that the failure to adopt its proffered instruction was prejudicial error.

We cannot agree that the district judge's action was an abuse of discretion. The court's instruction in general terms informed the jury that the law recognized approved trade customs and we believe that this sufficiently directed the jury's attention to this issue without the more specific reference requested by Martin & Stewart. We cannot conclude that the instruction as given did not fairly and adequately reflect the applicable law, and we find no error in the jury's charge.

### B.

■ Section 2–608(2) also requires that "[r]evocation of acceptance must occur ... before any substantial change in condition of the goods which is not caused by their own defects." Martin & Stewart claim that the only evidence presented showed without contradiction that Lackawanna removed the salt and hair from most of the first truckload of hides and split some of them. Therefore, Martin & Stewart asserts that the hides had been "substantially changed" as a matter of law and that no instruction concerning revocation of acceptance should have been given to the jury.

The "substantial change in condition" requirement insures that post-acceptance revocation, a more extraordinary remedy as the seller may have long since considered the transaction closed, is not abused by forcing sellers to take back used or mistreated goods. J. White & R. Summers, *Uniform Commercial Code* 254–55 (1972). Nebraska has long endorsed the protection of seller's rights in analogous cases of equitable rescission, *Caruso v. Moy,* 164 Neb. 68, 81 N.W.2d 826 (1957), and post-acceptance remedies under the Uniform Sales Act, *United States v. Bradley-Dodson Co.,* 281 F.2d 676, 681–82 (8th Cir.1960) (Blackmun, J.). While there is authority that Lackawanna's processing would constitute a "substantial change in condition" in at least one other jurisdiction, *Trinkle v. Schumacher Co.,* 100 Wis.2d 13, 301 N.W.2d 255 (1980) (dictum), no Nebraska court has considered the scope and meaning of this phrase.

A number of factors lead us to the conclusion that the district judge was justified in submitting Lackawanna's revocation of acceptance theory to the jury. First, evidence was offered which showed that only by processing the hides could the beetle damage be discovered. This supports Lackawanna's assertion that any change in the condition of the hides resulted from their own defects which, according to the language of and comments to section 2–608(2), does not constitute a substantial change in condition.[4] Secondly, Martin & Stewart sold the hides knowing that the processing was necessary to make the hides commercially usable to Lackawanna. Third, once Lackawanna discovered the damage, it rebrined the hides in an attempt to salvage the remainder. Finally, testimony was presented to show that Lackawanna's processing enhanced rather than impaired the value of the hides. Given these factors, our conclusion that this was a jury

---

**4.** Comment 6 to section 2–608(2) provides as follows:

  6. Under subsection (2) the prior policy is continued of seeking substantial justice in regard to the condition of goods restored to the seller. *Thus the buyer may not revoke his* *acceptance if the goods have materially deteriorated except by reason of their own defects.* Worthless goods, however, need not be offered back and minor defects in the articles reoffered are to be disregarded. (emphasis added).

question draws support from decisions holding that no substantial change in condition occurs when the buyer attempts to conform the goods to their bargained-for condition. *See, e.g., American Research Bureau v. E-Systems, Inc.,* 663 F.2d 189, 197–98 (D.C.Cir.1980) (applying Maryland law). These factors also favorably contrast this case with decisions holding that a substantial change does occur when the buyer uses or processes goods with knowledge of their nonconformity. *See Fargo Machine & Tool Co. v. Kearney & Trecker Corp.,* 428 F.Supp. 364 (E.D.Mich.1977); *In re G.S.F. Corp.,* 6 B.R. 894 (Bkrtcy.Mass. 1980); *Ace Chemical Corp. v. Atomic Paint Co., Inc.,* 31 N.C.App. 221, 229 S.E.2d 55 (1976). Our conclusion is reinforced in that, given the lack of controlling precedent, we accord substantial deference to the interpretation of state law by a district judge sitting in that forum. *Nelson v. Missouri Division of Family Services,* 706 F.2d 276 (8th Cir.1983).[5]

## C.

█ Martin & Stewart also objects to the jury instruction on damages for breach of warranty. Under section 2–714(1), damages determined "in any manner which is reasonable" are recoverable for breach of warranty. The typical measure used is the difference in market price between the goods as warranted and the goods as received, measured at the time and place of acceptance. Neb.Rev.Stat. ch. 91 § 2–714(2) (Reissue 1980); *Alliance Tractor & Implement Co. v. Lukens Tool & Die Co.,* 199 Neb. 489, 260 N.W.2d 193 (1977). Martin & Stewart allege that the only evidence offered by Lackawanna concerning the val-

ue of the hides as received was that they were "valueless," when in fact they were at least a number three grade for which there existed a ready market. It also claims that the $20,000.00 resale price is not a valid indication of the market price of the goods as received. This is because the goods were resold at that price four months after acceptance when it claims the price of cattle hides was inflated. Consequently, Martin & Stewart contend that Lackawanna did not satisfy its burden on the damages issue, and that therefore the issue should not have been submitted to the jury.

█ We must reject Martin & Stewart's contention. Section 2–714 clearly provides that a buyer's damages for a seller's breach of warranties may be determined "in any manner which is reasonable." This reflects the Uniform Commercial Code's mandate that "remedies provided by this act shall be liberally administered," Neb. Rev.Stat. ch. 91 § 1–106 (Reissue 1980), and that they need not be calculated with "mathematical certainty," *id.* at comment 1. Lackawanna presented evidence that the hides were valueless for its purposes and that it resold them for $20,000.00. The jury awarded Lackawanna the purchase price of the hides plus freight adjusted for the resale price and the value of the hides it retained. The evidence supports this determination and we cannot say it was unreasonable within the meaning of section 2–714.

## III.

The final point is Lackawanna's cross-appeal from the district court's denial of prejudgment interest. Lackawanna contends that it is entitled to prejudgment interest

---

**5.** Section 2–608(1) also requires that revocation be by "lot or commercial unit whose nonconformity substantially impairs its value to him...." Martin & Stewart argue that the truckload was the proper commercial unit and that its value was not substantially impaired because only two-thirds of the hides were damaged and a ready market existed for them and for the remaining one-third. The claim must be rejected. The jury was properly permitted to determine the commercial unit, and damage to two-thirds of the truckload qualifies as substan-

tial. *Cf. Countryside Mobile Homes v. Schade,* 204 Neb. 209, 281 N.W.2d 756 (1979) (subsequent sale of defective mobile home for less than one-half of its purchase price evidence of substantial impairment). In addition, the language of section 2–608(2) and the comments thereto indicate that impairment of value is a subjective standard, and evidence was presented which showed that the damaged hides were worthless for Lackawanna's upholstery business and therefore substantially impaired.

from September 1, 1979 under Neb.Rev. Stat. § 45–104 (Reissue 1978).

■■■ It is well established under Nebraska law that prejudgment interest is recoverable only when the claim is liquidated. A claim is liquidated if

the evidence furnishes data which, if believed, makes it possible to compute the amount without reliance upon opinion or discretion. Examples are claims upon promises to pay a fixed sum, claims for money had and received, claims for money paid out, and claims for goods or services to be paid for at an agreed rate.

*Abbott v. Abbott,* 188 Neb. 61, 195 N.W.2d 204, 209 (1972) (quoting McCormick, *Damages* 213 (1935)). Applying this standard, Lackawanna asserts that the jury's verdict of $73,854.58 was based on its revocation of acceptance theory using undisputed evidence; the contract price ($95,212.31) plus paid freight charges ($1,130.77) minus resale proceeds ($20,000.00) and the value of the hides retained ($2,488.50). The district court rejected Lackawanna's argument because the jury was also instructed on a breach of warranty theory. That instruction charged that damages in a warranty action are "as determined in any manner which is reasonable, ... the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted." Neb.Rev.Stat. ch. 91 § 2–714(2) (Reissue 1980). Given the discretion inherent in this "reasonableness" element and the impossibility of knowing which of the two theories the jury relied upon, the district court rejected Lackawanna's argument that its claim was liquidated.

■■■ We affirm the district court's determination based on a recent decision rejecting prejudgment interest on substantially similar facts. In *Nebraska Public Power Dist. v. Borg-Warner Corp.,* 621 F.2d 282 (8th Cir.1980), the plaintiff brought suit under Nebraska law for breach of warranties based on defects in water pumps manufactured and installed by the defendant. The jury returned a verdict "effectively equivalent" to an amount contained in a demand letter filed by plaintiff prior to trial. *Id.* at 285. The only difference was the disallowance of a single amount representing the cost of installing a pump recirculating system. Prejudgment interest was not awarded because of a "reasonableness" instruction to the jury. *Id.* at 287. In the present case, the jury, also acting under a "reasonableness" charge, appeared to award Lackawanna an amount based on undisputed figures established prior to trial. Again, similar to *Nebraska Public Power,* the jury reduced Lackawanna's request by a single amount—the value of the retained hides. In addition, the jury in this case exercised additional discretion not evident in *Nebraska Public Power* by rejecting Lackawanna's claim for incidental damages. We therefore believe that our decision in *Nebraska Public Power* controls this case, and cannot say that the district judge erroneously applied Nebraska law.

The judgment of the district court is affirmed.