Anthony ROTH, Appellee,

v.

**BLACK & DECKER, U.S., INC., Appellant.**

No. 83–1806.

United States Court of Appeals,
Eighth Circuit.

Submitted March 14, 1984.

Decided June 29, 1984.

As Amended on Denial of Rehearing
Aug. 1, 1984.

Mogab & Hughes Attys. Inc., Richard L. Hughes, St. Louis, Mo., for appellee.

Kortenhof & Ely, Ben Ely, Jr., St. Louis, Mo., for appellant. .

Before ROSS, JOHN R. GIBSON and BOWMAN, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Black & Decker, U.S., Inc., appeals from a judgment in favor of Anthony Roth as a result of serious lacerations to Roth's right leg and knee caused by an electric saw. The case was submitted on the theory of strict liability in tort and the jury returned a verdict of $165,000 actual damages and $35,000 punitive damages. On appeal Black & Decker claims some nine trial errors involving rulings on evidence, instructions to the jury, cross-examination and closing argument. The most serious issue it raises is whether punitive damages should have been submitted to the jury. We affirm in part and reverse in part.

Roth was using a power saw furnished by his employer on a job site in St. Louis, Missouri, in December, 1980. It had a retractable guard. A small extension-type spring would retract the guard to cover the blade when the cutting action was completed. The spring was exposed to sawdust, wood chips and cutting debris. A trigger in the handle activated the saw. The blade operated at a speed of 5150 rpm and usually revolved for about five seconds or so after the trigger was released.

Roth was working on wood that was wet with snow, cutting one-foot lengths from eight-foot two-by-fours which were placed on saw horses. He would place the two-by-fours in position, hold the saw by the handle at the rear, place the saw on the lumber, activate the blade, cut the lumber by pushing the saw through, release the trigger and then let the saw fall down to his right side because of its weight. The saw weighed about sixteen pounds. Roth had had no trouble with the guard closing properly. At about 1:00 p.m. he cut a board and allowed the saw to drop to his side as usual. He then felt the saw rip into his right leg, across, below and above the knee. When lying on the ground he noticed that the guard had not retracted and was open.

I.

The case was submitted to the jury on Missouri Approved Instructions. The theory for recovery was strict liability in tort which requires the significant finding that the saw was in a defective condition, unrea-

sonably dangerous when put to a reasonably anticipated use. (MAI 25.04) The punitive damages instruction required the following findings:

> [A]t the time defendant sold the saw defendant knew of the defective condition and danger [as submitted to you] and
>
> Second the defendant thereby showed complete indifference to or conscious disregard for the safety of others.

This instruction was patterned after MAI 10.02, and was modified to conform to *Racer v. Utterman,* 629 S.W.2d 387, 396–97 (Mo.App.1981), *cert. denied,* 459 U.S. 803, 103 S.Ct. 26, 74 L.Ed.2d 42 (1982). The instruction allowed, but did not require, the jury to return a verdict for punitive damages on the basis of these findings. In determining the submissibility of the issue of punitive damages, we must consider the evidence in the light most favorable to plaintiff. *DeLuryea v. Winthrop Laboratories,* 697 F.2d 222, 230 (8th Cir.1983).

Black & Decker argues there was no evidence of willful, wanton, or reckless conduct on the part of Black & Decker or any evidence of bad motive. It argues that the evidence showed that Black & Decker was unaware of any instance where the guard failed due to sawdust accumulation, that Black & Decker conducted extensive testing to assure that the guard functioned properly, that the accident saw met U.L., O.S.H.A. and G.S.A. specifications, and that there were no consumer complaints regarding guard failures due to sawdust accumulations.

Roth on the other hand urges that there is other testimony which meets the test. The saw had been designed in 1964 or 1965 by a draftsman, Cowman, who was still attending school and did not have a degree in mechanical engineering. Cowman copied other manufacturers' models and practices without testing the guard mechanism for potential malfunctions. He could not produce any safety criteria given to him. Cowman knew that the extension spring was exposed to the sawdust, that it was obvious that sawdust could get caught in the spring, and that a design with a torsion spring would help to eliminate that condition. Cowman stated that it was obvious that one of the primary causes of injuries from saws of this type was the failure of the guard to retract. While Black & Decker argues that much of this testimony relates to Cowman's knowledge in 1974, its generality and its stress of the obvious, when considered in the light most favorable to the plaintiff, raise an inference that Cowman would have known this earlier.

In September, 1974, the United States Consumer Products Safety Commission published a fact sheet reporting major accident patterns associated with power saws. One of the major patterns was the failure of the blade guard to retract properly after completion of a cut. Cowman denied having seen this document or another report of the Commission published in 1976. The redesign of the saw's guard began in 1972 and was completed in 1974. This was a year before the accident saw was manufactured. The new design substituted a covered torsion spring to eliminate the danger of clogging. In May of 1974 when the design was completed, Black & Decker's documents indicated that the major area of concern needing further evaluation and testing was the possibility of sawdust collecting around the torsion spring and hampering the operation of the guard. There were no efforts to recall the particular saws incorporating a guard system like the one on the accident saw.

The submissibility of punitive damages has recently been the subject of consideration in *Ferren v. Richards Mfg. Co.,* 733 F.2d 526 (8th Cir.1984), and in cases from the Missouri courts, *see e.g., Sledge v. Town & Country Tire Centers,* 654 S.W.2d 176 (Mo.App.1983); *Racer, supra.* Under Missouri law, acts justifying imposition of punitive damages "must be willful, wanton, malicious or so reckless as to be in utter disregard of consequences. There must be some element of wantonness or bad motive." *Vanskike v. ACF Industries, Inc.,* 665 F.2d 188, 208–09 (8th Cir.1981), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1632, 71

L.Ed.2d 867 (1982) (applying Missouri law). While it need not be shown that the defendant intended to cause injury to anyone, the evidence must show that the defendant was aware that its acts were wrongful in some way. *Sledge*, 654 S.W.2d at 182; *Groppel Co. v. United States Gypsum Co.*, 616 S.W.2d 49, 62 (Mo.App.1981). The knowledge of the wrongfulness of the act may be evidenced by a complete indifference to or conscious disregard for the safety of others. *Sledge*, 654 S.W.2d at 182.

■ Under the evidence presented in this case, the submissibility of punitive damages is a close question. We believe, however, that complete indifference to or conscious disregard for the safety of others is conduct that is just beyond the horizon of the pattern of evidence in this case. While Cowman's lack of knowledge of the government publications and his efforts to follow industry models and practices without testing certainly create issues of negligence, we do not believe that such evidence is sufficient to create a submissible issue on punitive damages. We have no reluctance in finding that there is sufficient evidence of a "defective condition, unreasonably dangerous" as required to recover under strict liability in tort; however, we do not believe the evidence is sufficiently strong to allow the jury to find that Black & Decker acted with complete indifference to or in conscious disregard of others' safety which would supply the knowledge of wrongfulness required. Although the May, 1974 Black & Decker document reveals that further testing was required on the guard spring that clogged with sawdust, this is not evidence that Black & Decker in fact knew that the accident saw was in a defective condition when it was sold. Therefore, we must reverse the award of punitive damages.

1. This Court has recognized that Rule 407 does apply in a strict liability case involving a manufacturer's duty to warn. *Kehm v. Procter & Gamble Mfg. Co.*, 724 F.2d 613, 621 (8th Cir. 1983); *DeLuryea v. Wintrhop Laboratories*, 697 F.2d 222, 227–29 (8th Cir.1983). This is not a duty to warn case.

## II.

We are invited by Black & Decker to address a number of questions concerning the evidence and instructions in this case. We are urged to do so because of the great impact this will have on diversity cases. We observe, however, that the evidence and instruction questions it raises are issues to be determined under federal law and, for the most part, they are not novel.

■ A new model saw with subsequent design modifications was introduced in evidence. Black & Decker argues that under Rule 407 of the Federal Rules of Evidence, which limits the admission of evidence of subsequent repairs, the saw should have been excluded. Its argument is primarily based on the submission of punitive damages.

We have held that Rule 407 does not apply to actions based on strict liability in tort,[1] *Unterburger v. Snow Co.*, 630 F.2d 599, 603 (8th Cir.1980), because "Rule 407 is, by its terms, confined to cases involving negligence or other culpable conduct." *Robbins v. Farmers Union Grain Terminal Ass'n*, 552 F.2d 788, 793 (8th Cir.1977). Black & Decker contends, however, that Roth's claim for punitive damages put Black & Decker's conduct in issue, and therefore the evidence of subsequent repair[2] should have been excluded. The argument fails for two reasons. First, we have found the issue of punitive damages based on willful, wanton, malicious or reckless conduct to have been improperly submitted to the jury. Thus, culpable conduct was not an issue. Secondly, the evidence was admissible with respect to the issue of strict liability, and Black & Decker did not request a limiting instruction which may have been necessary under Rules 105 and 403 of the Federal Rules of Evidence. *See*

2. The accident saw was manufactured in 1975 and the accident occurred in 1980. The modification was designed in 1974, but such modification was not incorporated until 1976. Due to our resolution of the issue, we need not determine whether this case really involves a subsequent repair.

*Unterburger, supra.* Not having requested such an instruction, Black & Decker cannot now claim that the district court erred. See *Savoie v. Otto Candies, Inc.,* 692 F.2d 363, 370 (5th Cir.1982).

### III.

 Black & Decker argues that the district court erred in admitting into evidence excerpts from reports prepared by or for the United States Consumer Products Safety Commission and in failing to exclude evidence relating to other accidents. In neither instance did the court allow the documents to go to the jury, and after Roth's counsel read excerpts from the reports, the trial judge cautioned the jury that "there is nothing in this document that identifies a Black & Decker saw ...."

Black & Decker's argument that the reports were inadmissible hearsay is without merit. Rule 803(8)(C) of the Federal Rules of Evidence excepts public records and reports from the general prohibition against hearsay. *See Kehm v. Proctor & Gamble Mfg. Co.,* 724 F.2d 613, 618–20 (8th Cir. 1983); *Smith v. Ithaca Corp.,* 612 F.2d 215, 221–222 (5th Cir.1980).

 Black & Decker's argument for the exclusion of other accident evidence must also fail. The admissibility of "similar incidents" is within the discretion of the trial judge, 22 C. Wright and K. Graham, *Federal Practice and Procedure,* § 5170 (1978), who must balance the probative value and need for such evidence against the dangers of unfair prejudice, undue consumption of time and distraction of the jury. McCormick, *Evidence* 473–76 (2d ed. 1972). In ruling on the admissibility of evidence, the trial judge has a wide discretion, *Kontz v. K-Mart Corp.,* 712 F.2d 1302, 1304 (8th Cir.1983), and his decisions will not be disturbed unless there is a clear and prejudicial abuse of discretion. *Haynes v. American Motors Corp.,* 691 F.2d 1268, 1272 (8th Cir.1982); *Simpson v. Norwesco, Inc.,* 583 F.2d 1007, 1013 (8th Cir.1978). We are unable to conclude that admission of the evidence complained of constituted such an abuse.

### IV.

 Black & Decker alleges two errors arising from the trial court's instructions to the jury. Following MAI 4.01 verbatim, the trial court charged the jury that if it found for plaintiff it should award him such sum as the jury believed would fairly and justly compensate him for any damages he sustained and was reasonably certain to sustain in the future "as a direct result of the occurrence mentioned in the evidence." Black & Decker contends that the court committed reversible error in failing to modify MAI 4.01 to limit the jury's consideration of damages to the single occurrence for which Black & Decker might be held liable where two separate occurrences contributed to plaintiff's injury. Black & Decker claims that Roth received a separate injury when, following the injury with the saw, he slipped and fell while walking on crutches. It claims that this was a separate and independent injury, and that the jury should have been instructed that it was not to award damages which might have resulted from this later fall. Black & Decker cannot prevail on this issue. Although it objected to the instruction at trial, Black & Decker submitted no modification of the trial court's damage instruction as permitted by Rule 51 of the Federal Rules of Civil Procedure, nor did it request a withdrawal instruction. Appellate courts are not inclined to grant a new trial because of an ambiguity in an instruction when it appears that "the complaining party made no effort at the trial to have the matter explained." *Garnatz v. Stifel, Nicolaus & Co.,* 559 F.2d 1357, 1362 (8th Cir.1977), *cert. denied,* 435 U.S. 951, 98 S.Ct. 1578, 55 L.Ed.2d 801 (1978) (quoting *Spring Co. v. Edgar,* 99 U.S. (9 Otto) 645, 659, 25 L.Ed. 487 (1878). Where the charge to the jury correctly sets forth the law, a lack of perfect clarity will not render the charge erroneous. *Tribble v. Westinghouse Elec. Corp.,* 669 F.2d 1193, 1197 (8th Cir.1982), *cert. denied,* 460 U.S. 1080, 103 S.Ct. 1767, 76 L.Ed.2d 342 (1983). We conclude that the damages instruction accu-

rately stated the law and did not mislead the jury.

Black & Decker asserts that the trial court also erred in refusing to give its proposed instruction defining when a product is unreasonably dangerous. While state law determines the substance of jury instructions in a diversity action, the granting or denying of such instructions is controlled by federal law. *Lackawanna Leather Co. v. Martin and Stewart, Ltd.*, 730 F.2d 1197, 1201 (8th Cir.1984). A party is entitled to have its theory of the case presented to the jury if "legally correct, supported by the evidence and brought to the court's attention in a timely request." *Board of Water Works Trustees v. Alvord, Burdick & Howson, Inc.*, 706 F.2d 820, 823 (8th Cir.1983). The instruction proposed by Black & Decker was not taken from MAI, and Black & Decker cited no Missouri cases in support of the instruction. A trial judge is given broad discretion in framing the instructions, and will not be disturbed on appeal if the instructions, when considered as a whole, adequately and sufficiently state the law applicable to the case. *Board of Waterworks Trustees*, 706 F.2d at 823; *Tribble*, 669 F.2d at 1197. The trial court instructed the jury in accordance with MAI 25.04 and *Racer, supra.* We cannot conclude that the instructions as given did not fairly and adequately reflect the applicable law, and we find no reversible error in the jury's charge.

## V.

Black & Decker alleges that the trial court also erred (1) in permitting plaintiff's counsel to conduct an abusive, argumentative cross-examination, (2) in sustaining an objection to its cross-examination of plaintiff's medical expert, and (3) in overruling its objections to plaintiff's closing argument. We have carefully considered these allegations of error and conclude that they are without merit.

We affirm the judgment of the district court in favor of Roth as to actual damages. We reverse the award of punitive damages.