Andrew KELTNER, Appellant,

v.

FORD MOTOR COMPANY, Appellee.

No. 84–1151.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 14, 1984.
Decided Nov. 26, 1984.

Jerald J. Bonifield, Belleville, Ill., for appellant.

---

Edwin L. Lowther, Jr., Little Rock, Ark., for appellee.

Before BRIGHT, JOHN R. GIBSON and FAGG, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Andrew Keltner's claim that his injuries following an automobile accident were enhanced because the doors of his Ford van jammed after the collision was rejected at trial by the jury, which returned a verdict for Ford Motor Company. Keltner appeals the judgment entered on the verdict and argues that the district court[1] improperly instructed the jury on comparative negligence, since it was told to allocate the fault causing the occurrence, instead of the fault causing his injuries. He also argues that the district court erred in admitting evidence of his drinking habits. We affirm the judgment of the district court.

Keltner had purchased a used 1973 Ford Club Wagon van about six months before his accident. In addition to regular doors in front, it had sliding doors on the passenger side and two rear doors, one of which had to be opened from the outside before the other could be opened.

While driving the van on a rainy night on a highway near Brinkley, Arkansas, Keltner collided with the back of a tractor-trailer traveling in front of him and went off the road. Keltner testified that he saw no taillights nor any other sign of the tractor-trailer before the collision. The driver of the tractor-trailer testified that he had followed the Keltner van for three or four miles, at first unable to pass it because it was swerving from one lane to the other. He eventually did pass it and was driving about sixty miles per hour when he felt a "good jar" from the collision. One of the witnesses testified that the van could have been traveling ninety-five miles per hour before the impact.

Keltner testified that after the van came to a stop, he tried but was unable to open the passenger doors, found that the side sliding door was jammed, and was able to open the rear door only three or four inches. Before he was able to escape, approximately thirty percent of his body was burned in a fire resulting from the accident. Both ankles were also fractured. There was conflicting testimony whether the fractures were caused by his attempting to kick the rear door open. His right leg was ultimately amputated below the knee.

Keltner presented expert witnesses who testified that in test collisions the van's doors had jammed and fuel had leaked. There was also expert testimony that an inside latch on the rear door was needed as standard equipment to make the van safe.

Keltner could not remember if he had been drinking the night of the accident but acknowledged it was possible he could have been. Over objection, he stated on cross-examination that around the time of the accident he regularly drank a six-pack of beer four nights a week. A state trooper and a resident physician at the hospital where Keltner was taken testified that he smelled of alcohol there.

The case was submitted on the separate grounds of negligence and of manufacture and sale of a defective product. The jury returned a verdict for Ford.

**I.**

Keltner argues that the comparative negligence instruction given by the court was in error, since the jury was told to allocate the fault causing the occurrence, instead of the fault causing his injuries.[2] He argues that the instruction does

---

1. The Honorable Elsijane T. Roy, United States District Judge for the Eastern and Western Districts of Arkansas.

2. This portion of the instructions stated:

If you should find that the *occurrence* was proximately caused by the negligence of Ford Motor Company or by Ford Motor Company's supplying a defective product in an unreasonably dangerous condition and not by fault on the part of Mr. Keltner, then Mr. Keltner is entitled to recover the full amount of any damages you find he has sustained as a result of the occurrence.

not reflect the law of Arkansas, since it in essence directs a verdict for a defendant in crashworthiness or enhanced injury cases.

We have enunciated a number of principles that guide us in reviewing jury instructions in a diversity case. A party is not entitled "to have the jury instructed in any particular language, so long as the jurors understand the issues and are not misled." *Stineman v. Fontbonne College,* 664 F.2d 1082, 1087 (8th Cir.1981), *quoted in Lackawanna Leather Co. v. Martin & Stewart, Ltd.,* 730 F.2d 1197, 1201 (8th Cir.1984). A district judge has broad discretion in the choice of form and language; "as long as the entire charge fairly and adequately contains the law applicable to the case, the judgment will not be disturbed on appeal." *Board of Water Works Trustees v. Alvord, Burdick & Howson,* 706 F.2d 820, 823 (8th Cir.1983), *quoted in Lackawanna,* 730 F.2d at 1201. In states with pattern instructions, the district court may, but need not, use such instructions. *See Crues v. KFC Corp.,* 729 F.2d 1145, 1151 (8th Cir.1984); *Hrzenak v. White-Westinghouse Appliance Co.,* 682 F.2d 714, 720 (8th Cir.1982).

The comparative negligence instruction given by the district court was patterned after Arkansas Model Jury Instruction (AMI) 2115 in which the word "occurrence" is used. By order of the Supreme Court of Arkansas, state courts are to use AMI instructions unless the trial judge finds that they do not accurately state the law. The district court declined to modify the model instruction as Keltner had requested because the model instruction had been prepared by a number of experts in Arkansas law and because it felt that the same re-

quest "could be made in every case in which there was an automobile accident when people were injured and requested damages thereafter." Keltner on appeal cites no direct Arkansas authority in support of his contention that the instruction was inappropriate. Since the state courts have not ruled on the issue, we give great weight to the determination of the experienced district judge in this question of state law. *Kansas State Bank v. Citizens Bank,* 737 F.2d 1490, 1496 (8th Cir.1984); *see Renfroe v. Eli Lilly & Co.,* 686 F.2d 642, 648 (8th Cir.1982).

Keltner's basic argument is that "occurrence" in the instruction means the same as "collision" and thereby prevents recovery in a crashworthiness case, since in such a case recovery may be had where the design of the automobile did not cause the collision but nonetheless enhanced the injuries resulting from the collision. We believe, however, that "occurrence" must be given a broader meaning. The term "collision," no doubt, would have narrowed the attention of the jury to the initial impact of the van with the tractor-trailer. However, the plain meaning of the term "occurrence" is sufficiently broad to include not only the collision of the van with the tractor-trailer, but also the travel of the van after impact until it came to rest, including the resulting jamming of the doors.

We also note a certain inconsistency in the alternative instruction offered by Keltner. While Keltner sought to replace the term "occurrence" with the term "injuries" in the first and second paragraphs of the model instruction, his proffered instruction retained the term "occurrence" in the third paragraph. Even if we assume that the

---

If you should find that the *occurrence* was proximately caused by the fault of both Mr. Keltner and Ford Motor Company, then you must compare the percentages of their fault.

If the fault of Mr. Keltner is of less degree than the fault of Ford Motor Company, then Mr. Keltner is entitled to recover any damages which you may find he has sustained as a result of the occurrence after you have reduced them in proportion to the degree of his own fault.

On the other hand, if Ford Motor Company was not at fault or if the fault of Mr. Keltner is equal to or greater in degree than the fault of Ford Motor Company, then Mr. Keltner is not entitled to recover any damages. (Emphasis added.)

Keltner argues that the word "occurrence" as emphasized above should have been replaced with the word "injuries." He specifically so objected to the instruction at trial and offered an instruction containing the requested language.

model instruction was deficient, we are not sure, given the presence of both terms, that the proposed instruction would cure the deficiency Keltner claims.

■ The instructions that were given must be evaluated as a whole. The jury was told what elements it needed to find to return a verdict for Keltner. The charges on both negligence and the manufacture and sale of a defective product contained the proposition that the negligence or defective condition "was a proximate cause of plaintiff's damages." [3] Thus, these instructions were worded in the way that Keltner wanted the comparative negligence instruction to be worded. When the instructions are read as a whole, we do not believe that the use of the word "occurrence" on two occasions in the comparative negligence instruction diverted the jury from its proper task, since they made clear that to find for Keltner the jury had to determine that either negligence or a defective condition of his vehicle was the proximate cause of his damage or injuries.

In support of his contention Keltner cites the statement in *Larsen v. General Motors Corp.*, 391 F.2d 495, 503 (8th Cir.1968), that a "manufacturer should be liable for that portion of the damage or injury caused by the defective design over and above the damage or injury that probably would have occurred as a result of the impact or collision absent the defective design." This passage affords Keltner no support for his specific contentions in this case. Keltner's argument does not deal with the legal theory of recovery in crashworthiness cases.

Rather, it depends totally on a narrow and restrictive interpretation of the term "occurrence." We are compelled to reject his interpretation and therefore conclude that the instructions in this case, read as a whole, properly informed the jury of the issues it was to decide.

## II.

Keltner argues that the district court erred in admitting evidence of his drinking habits. He argues that the error was prejudicial, since it persuaded the court to admit other evidence of drinking (the swerving of the van observed by the truck driver and the odor of alcohol noticed at the hospital) which it otherwise would have excluded.

Rule 406 of the Federal Rules of Evidence provides that evidence of a person's habit is relevant to prove that his conduct on a particular occasion was in conformity with his habit. Ford made its offer of proof regarding Keltner's drinking under Rule 406, and the district court, in ruling the evidence admissible, referred to Keltner's "habit." Keltner, however, in his reply brief argues that his drinking was not regular enough to be characterized as a habit.

■ The notes of the Advisory Committee on Proposed Rules do state that evidence of intemperate behavior "is generally excluded when offered as proof of drunkenness in accident cases" because of "failure to achieve the status of habit." Fed.R.

---

**3.** The instructions state:

Andrew Keltner asserts two separate grounds for the recovery of damages: First, that a defective van was manufactured and sold by Ford Motor Company; and second, that there was negligence on the part of Ford Motor Company.

With respect to the manufacture and sale of a defective product, Andrew Keltner claims damages and has the burden of proving each of four essential propositions:

First: That plaintiff has sustained damages;

Second: That Ford Motor Company was engaged in the business of the manufacture and sale of Ford vans;

Third: That the van was supplied by Ford Motor Company in a defective condition which rendered it unreasonably dangerous; and

Fourth: That the defective condition was a proximate cause of plaintiff's damages.

With respect to the claim of negligence, plaintiff has the burden of proving each of three essential propositions:

First: That plaintiff has sustained damages;

Second: That Ford Motor Company was negligent; and

Third: That such negligence was a proximate cause of plaintiff's damages.

You should consider each asserted ground for recovery separately.

Evid. 406 advisory committee note. Keltner himself, however, in his original brief to this court characterized his pattern of drinking as a "habit." Further, the statement of the Advisory Committee is at odds with the probability theory of habit seemingly adopted elsewhere in the Notes to Rule 406. *See* 23 C. Wright & K. Graham, *Federal Practice and Procedure* § 5273 (1980). In addition, several cases have held that where there was evidence of intoxication at the time of the accident, testimony of past drunkenness was admissible. *See M.K. Hall Co. v. Caballero*, 358 S.W.2d 179, 183 (Tex.Civ.App.1962); *R.T. Herrin Petroleum Transport Co. v. Proctor*, 338 S.W.2d 422, 431 (Tex.1960); *Locke v. Brown*, 194 So.2d 45, 47 (Fla.Dist.Ct.App. 1967); Annot., 46 A.L.R.2d 103 (1956). Finally, even if we assume that the district court erred in admitting the evidence complained of, the record simply does not support Keltner's statement that the "trial court's mistaken belief that this evidence was admissible led it to admit the testimony of the investigating police officer and attending doctor." Cross-examination of Keltner on his drinking was allowed only after a full offer of proof by Ford that included the expected testimony of the officer and physician as well as the testimony regarding the swerving of the van and the circumstances surrounding the collision. The district court, while expressing some reluctance to do so, ruled that the proffered testimony would be admitted, basing its ruling on its "view [of] the totality of the circumstances." There is no suggestion in the record that Keltner's habit was the dispositive factor upon which the ruling turned. Further, we observe that later in the proceedings the testimony of the officer and doctor came in without objection. We therefore conclude that the district court did not abuse its discretion in admitting evidence of Keltner's drinking habits.

We have carefully considered the arguments raised by Keltner and find them to be without merit. The judgment of the district court is affirmed.