# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 97-3539

_____

| | | |
|---|---|---|
| Harry E. Horstmyer; Eveline M. Horstmyer, | * | |
| | * | |
| | * | |
| Appellants, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Eastern District of Missouri |
| | * | |
| Black & Decker, (U.S.), Inc., | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: January 22, 1998

Filed: July 27, 1998

_____

Before McMILLIAN, FLOYD R. GIBSON[1] and BOWMAN,[2] Circuit Judges.

_____

McMILLIAN, Circuit Judge.

_____

[1]At the panel's conference on January 22, 1998, following oral argument of the case, Judge Floyd R. Gibson concurred in the result reached in this opinion. Judge Gibson has been disabled by illness from reviewing the opinion, which is being filed in the interest of avoiding undue delay.

[2]Honorable Pasco M. Bowman became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 18, 1998.

Appellants Harry and Eveline Horstmyer, husband and wife, appeal from a final order entered in the United States District Court[3] for the Eastern District of Missouri upon a jury verdict for appellee Black & Decker (U.S.), Inc. (Black & Decker), on their tort claims. See Horstmyer v. Black & Decker (U.S.), Inc., No. 4:96CV649 CDP (E.D. Mo. Aug. 20, 1997) (slip op.). For reversal, appellants contend that the district court (1) abused its discretion in using a Special Verdict Form that confused the jury and does not comply with Missouri law; (2) abused its discretion in giving a curative instruction that confused the jury; and (3) erred in dismissing their negligent recall claim. The district court had diversity jurisdiction over appellants' action under 28 U.S.C. § 1332. We have jurisdiction over the appeal under 28 U.S.C. § 1291. For the reasons discussed herein, we affirm the order of the district court.

## Background

Appellants brought this products liability suit against Black & Decker for serious, permanent, and painful injuries sustained by Harry Horstmyer on April 14, 1995, when his right hand came into contact with the spinning blade of his Black & Decker Model 1703, Type 1 miter saw during home use. As a result of his injuries, Harry incurred medical expenses totaling approximately $65,000.

The Model 1703, Type 1 miter saw is manufactured, marketed, and sold by Black & Decker. Harry's miter saw had a manual brake and a lower plastic blade guard that is activated solely by gravity. In August 1988 Black & Decker had recalled several miter saws, including the Model 1703, Type I miter saw like Harry's, because the lower blade guard had a tendency to "hang up"; that is, the lower blade guard would stick and leave the lower blade unguarded. For reasons that are disputed on

---

[3]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

appeal, the miter saw that Harry was using at the time of his injury was not recalled.[4]

In their complaint, appellants asserted claims for strict liability product defect, strict liability failure to warn, negligent design, breach of implied warranty, negligent recall, and failure to comply with the Consumer Product Safety Act, 15 U.S.C. § 2051 et seq. (1972) (CPSA). In addition, Eveline Horstmyer filed a derivative claim for loss of consortium. Appellants voluntarily dismissed the CPSA counts prior to trial. By order of May 20, 1997, the district court granted Black & Decker's motion to dismiss appellants' negligent recall claim for failure to state a claim for which relief may be granted. Appellants ultimately submitted the following claims to a jury following a five-day trial: strict liability product defect, negligent design of the blade guard, and negligent failure to install an automatic brake.

In reaching their verdict, the jury was asked to complete a Special Verdict Form. Black & Decker proffered the form at an informal jury instruction conference on June 12, 1997. Pursuant to the Case Management Scheduling Order entered by the district court, the parties were required to submit all proposed jury instructions no later than twenty (20) days prior to trial, which commenced on June 9, 1997. The district court declined to give Black & Decker's proposed Special Verdict Form, on the ground that it was "entirely confusing." Transcript of Instruction Conference (Transcript) at 9. The district court informed the parties that instead it would revise the verdict form and adjourn the jury instruction conference until the following day, at which time the parties could review the revised form and make a record. Id. at 35.

---

[4]Appellants contend that Harry's miter saw was not recalled because of a numbering error in Black & Decker's recall notice. Black & Decker argues that Harry's miter saw was not recalled because Harry never sent in his warranty.

The following morning, the parties reviewed the minor changes that the district court had made to the Special Verdict Form and each party proposed additional changes which the district court incorporated. Appellants' counsel stated on the record that Black & Decker's incorporated changes were "more confusing than the verdict form that the Court ha[d] worked out tha[t] was originally submitted by the plaintiff, but then refined quite a bit." Id. at 46. However, neither party objected to the district court's giving the revised Special Verdict Form; nor did either party make any specific objections to its content.

Later, during deliberations, the jury submitted a note to the district court expressing confusion as to whether it was necessary to find against Black & Decker on all the elements presented in the first two questions of the Special Verdict Form, in order to find for appellants. The jury's note reads as follows:

> We all seem to be somewhat confused by the wording of the first two questions because of the two part aspect of each question and possible conflict in answers between the two parts of the sentences.
>
> Could we get a clarification on how to come to a decision on these questions.

Appellants' Initial Appendix at 95.

Acknowledging that the Special Verdict Form, in combination with the jury instructions regarding comparative fault, was "confusing," Transcript at 51, the district court held a conference with the parties to determine how to respond to the jury's query. The district court proposed three alternative instructions. Appellants objected to the district court's proposed instructions and offered their own instruction. The district court rejected appellants' proposed instruction and ultimately gave one of its proposed instructions.

-4-

Shortly thereafter, the jury returned the Special Verdict Form, answering questions 1 and 2 in the negative, in favor of Black & Decker. The district court entered judgment in favor of Black & Decker based on the jury's verdict. Appellants timely filed a motion for a new trial which was denied by order dated August 20, 1997. See slip op. at 3. Appellants then timely filed notice of appeal under Rule 4(a) of the Federal Rules of Appellate Procedure.

## Discussion

The portion of the Special Verdict Form at issue in this appeal reads as follows:

1. Did the Defendant sell the Model 1703 miter saw in the course of Defendant's business to the Plaintiff Harry Horstmyer in a defective condition unreasonably dangerous when put to a reasonably anticipated use, and did Harry Horstmyer use the Model 1703 miter in a manner reasonably anticipated?

Answer: _____ Yes _____ No

2. Did the Defendant design the Model 1703 miter saw in a defective manner either because the saw did not have an automatic brake or because it had a gravity guard that did not protect from below, and did the Defendant fail to use ordinary care to design the Model 1703 miter saw to be reasonably safe?

Answer: _____ Yes _____ No

**Note:** If your answers to either question 1 or question 2 (or to both) was [sic] "yes", proceed to the next questions. If your answers to both questions 1 and 2 were "no" then do not answer any more questions, but simply have your foreperson sign and date the form.

Appellants' Initial Appendix at 92.

As a preliminary matter, appellants apparently challenge the district court's use of the Special Verdict Form on the ground that Black & Decker submitted the form to the district court after the deadline for jury instruction submissions. As for the content of the form, appellants contend that the statements of law contained in questions 1 and 2 are inconsistent with Missouri law because they do not permit the jury to consider principles of pure comparative fault. Appellants further argue that "neither question one, two, nor the instructions set forth on the Special Verdict Form adequately informed the jury that they must consider the instructions as a whole or [that] they must disregard any fault of Plaintiff Harry Horstmyer in considering Defendant's liability under questions #1 and #2." Appellants' Brief at 13. As a result, appellants assert, the jury was permitted to consider evidence of Harry's negligence as a complete bar to recovery, contrary to Missouri comparative fault law. Moreover, although the remainder of the form directed the jury to consider causation and issues of comparative fault, appellants argue that the jury was expressly precluded from reaching those issues on the form because it answered the first two questions in the negative.

Appellants further submit that the Special Verdict Form differs significantly from jury instructions Nos. 6 and 10, which it was intended to restate. Jury instructions Nos. 6 and 10 set forth the elements of strict liability product defect and negligent product defect, respectively.[5] Both instructions are prefaced with the following statement regarding comparative fault: "In your verdict you must assess a percentage of fault to defendant whether or not plaintiff Harry Horstmyer was partly at fault." Appellants' Initial Appendix at 77, 81. Appellants maintain that the district court's failure to include similar language in the Special Verdict Form (i.e., its failure to instruct the jury

---

[5]Jury instructions Nos. 6 and 10 are based on Missouri Approved Jury Instructions (MAI) 25.04 and 25.09, respectively, and, pursuant to MAI 37.01, were modified to include language on comparative fault in view of evidence of Harry's negligence.

not to consider Harry's fault in responding to the first two questions) was an error of law and prejudicial to appellants. Furthermore, appellants argue that the district court was aware that the Special Verdict Form was unduly confusing. As support, appellants cite the district court's own observations[6] and appellants' counsel's statement on the record, before the form went to the jury, that the form was confusing. Transcript at 46.

Consistent with their challenge to the use and content of the Special Verdict Form, appellants also argue that the district court abused its discretion in (1) rejecting their proposed response to the jury's query regarding the Special Verdict Form and (2) giving a curative instruction that, according to appellants, failed to include one of their principal claims of negligence asserted at trial, thereby compounding the prejudice to appellants. Appellants proposed that the district court give the following instruction in response to the jury's query: "You have heard all the evidence and been given the instructions on the law. Your decision must be guided by the evidence and instructions you have received." Id. at 51-52. In its stead, the district court gave the following instruction:

---

[6]As noted above, upon initially receiving the Special Verdict Form, the district court refused to give it as written on the ground that it was "entirely confusing." Transcript of Instruction Conference at 9. Moreover, upon receiving the note from the jury, the district court stated,

[T]hese instructions are unclear as given, and . . . a clarifying instruction is necessary. The instructions themselves talk about assessing a percentage of fault, where the questions [on the Special Verdict Form] ask do you find all of the elements of those verdict directors. The combination is confusing, and I think the jury's confusion is reasonable . . . . I am concerned about whether those instructions were appropriate as we gave them . . . .

Id. at 51.

As set forth in instructions 6 and 10, you must find all of the elements set forth in those instructions to find defendant at fault. In other words, all parts of question 1 must be answered yes for the answer for the answer to question 1 to be "yes." All parts of question 2 must be answered "yes" for the answer of question 2 to be "yes." If your answer to any part of either question is "no," then you must answer that question "no."

Appellants' Initial Appendix at 96.

Appellants claim that the district court's instruction quoted above, along with the Special Verdict Form, improperly limited the jury's deliberations to questions 1 and 2 of the Special Verdict Form. In addition, appellants contend that the instruction prevented the jury from finding that the 1703 miter saw was defective *either* because it did not have an automatic brake *or* because it had a defective lower blade guard. Thus, they argue, the jury was improperly prevented from answering "yes" to question 2. Based on these arguments, appellants maintain that the district court erred in denying their motion for a new trial.

Black & Decker contends that appellants failed to object adequately to the use and content of the Special Verdict Form as required by Rule 51 of the Federal Rules of Civil Procedure, and thus have not preserved these issues for appeal. Appellee's Brief at 1-3. Black & Decker further maintains that appellants' failure to lodge a proper objection limits this court's review of the jury instructions to plain error.[7] Id. at 3-4.

---

[7]Black & Decker further argues that, by not expressly arguing that the substance of the Special Verdict Form was "plain error" in their opening brief on appeal, appellants have waived this issue entirely. However, this argument takes the waiver issue too far because, while appellants did not assert their claims under the "plain error" standard of review, they have clearly challenged the legal sufficiency of the Special Verdict Form in their briefs, thereby giving sufficient notice of the alleged error.

Under the plain error standard of review, Black & Decker asserts that the instructions *as a whole* fairly and adequately presented the issues of the case to the jury, were adequate and fair to both parties, and thus, are not reversible as plain error. Specifically, Black & Decker notes that the failure to include the issue of comparative fault in the Special Verdict Form was not plain error because, as a matter of law, questions 1 and 2 obviate any inquiry into comparative fault if answered in favor of Black & Decker. Black & Decker further contends that the Special Verdict Form simply permitted the jury to determine first and foremost whether appellants had proven the essential elements of their claim. Black & Decker also argues that, like appellants' other contentions, appellants' arguments regarding the curative instruction have been waived in light of appellants' failure to specify their objections to the district court. On the merits, Black & Decker maintains that the district court's curative instruction was correct and within the broad range of discretion granted trial judges in crafting jury instructions.

Absent plain error, appellants must raise specific objections to the form or content of jury instructions, including special interrogatories, before the district court in order to preserve such matters for appeal. Frensley v. National Fire Ins. Comp. of Hartford, 856 F.2d 1199,1203 (8th Cir. 1988) ("[I]f a party fails to raise a specific objection in the trial court to the form or contents of an interrogatory, it cannot raise that objection for the first time on appeal."); see also Dupre v. Fru-Con Eng'g, Inc., 112 F.3d 329, 334 (8th Cir. 1997) (Dupre) ("Our law on this subject is crystal clear: [T]o preserve an argument concerning a jury instruction for appellate review, a party must state distinctly the matter objected to and the grounds for the objection on the record."). The Federal Rules of Civil Procedure expressly provide that "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Fed. R. Civ. P. 51; see also Commercial Property Invs., Inc. v. Quality Inns Int'l, Inc., 61 F.3d 639, 643 (8th Cir. 1995) (holding that Rule 51 requires a litigant to give specific objections to a jury instruction before

the jury retires; otherwise, the right on appeal to object to a jury instruction on those grounds is waived). "The purpose of Rule 51 is to compel litigants to afford the trial court an opportunity to correct any error in the instructions and also *to prevent the losing party from obtaining a new trial through relying on a possible error in the original trial.*" Johnson v. Houser, 704 F.2d 1049, 1051 (8th Cir. 1983) (per curiam) (emphasis added); see also Arthur Young & Co. v. Reves, 937 F.2d 1310, 1334 (8th Cir. 1991) ("'The necessity of a retrial is avoided when, by design or through sheer neglect, the losing party fails to make objection at the proper time.'") (quoting 9 C. Wright & A. Miller, Federal Practice and Procedure § 2551 (1971) (footnotes omitted)).

Our review of the record reveals that appellants did not object to the use or content of the Special Verdict Form and objected only generally to the use of the district court's curative instruction. With respect to the Special Verdict Form, appellants merely asserted that Black & Decker's proposed changes to the form were "more confusing" than the general verdict form that appellants had submitted earlier to the district court. The district court therefore was not afforded an opportunity to correct any alleged substantive errors in either the Special Verdict Form or the curative instruction because such errors were never specifically identified by appellants. Accordingly, any error in the Special Verdict Form or the curative instruction is waived absent a showing of plain error. See, e.g., Dupre, 112 F.3d at 333 (holding that general objection to instruction and statement that instruction should not be given is insufficient to preserve objection for appeal absent plain error); Rush v. Smith, 56 F.3d 918, 925 (8th Cir. 1995) (Rush) ("We have no discretion to correct forfeited errors to which no objection was made unless they meet the plain error standard . . . .").

"Plain error is a stringently limited standard of review," especially in the civil context, and must result in a miscarriage of justice in order to compel reversal. Id. In reviewing a substantive challenge to jury instructions, the pertinent query is "'whether the instructions, taken as a whole and viewed in light of the evidence and applicable

law, fairly and adequately submitted the issues in the case to the jury.'" Kansas City Power & Light Co. v. Ford Motor Credit Co., 995 F.2d 1422, 1430 (8th Cir. 1993 ) (quoting Jones v. Board of Police Comm'rs, 844 F.2d 500, 504 (8th Cir. 1988)).  A district court's decision to reject a proffered jury instruction is subject to reversal "only if we find that, when viewed in their entirety, the jury instructions contained an error or errors that affected the substantial rights of the parties."  Hastings v. Boston Mut. Life Ins. Co., 975 F.2d 506, 510 (8th Cir. 1992) (Hastings).  "[T]he district court has discretion in the style and wording of jury instructions so long as the charge as a whole fairly and adequately states the law."  Beckman v. Mayo Found., 804 F.2d 435, 438 (8th Cir. 1986).  Furthermore, "[w]here the charge to the jury correctly sets forth the law, a lack of perfect clarity will not render the charge erroneous."  Roth v. Black & Decker, U.S., Inc., 737 F.2d 779, 783 (8th Cir. 1984) (Roth); see also Hastings, 975 F.2d at 510 ("[W]e will not find error in instructions simply because they are technically imperfect or are not a model of clarity.").  This court must apply Missouri law in determining the substance of the jury instructions in this diversity case, while federal law governs our review of the discretion exercised in refusing or admitting such instructions.  Roth, 737 F.2d at 784.

In the instant case, the instructions as a whole correctly set forth Missouri law on strict liability product defect, negligent product defect, and comparative fault.  Rule 49 of the Federal Rules of Civil Procedure grants district courts the discretion to use special verdicts.  We find no error in the district court's decision to use the Special Verdict Form, even as an eleventh-hour submission.  Davis v. Ford Motor Co. (In re Davis), 128 F.3d 631, 633 (8th Cir. 1997) (holding that  the district court's exercise of discretion under Rule 49 is virtually unreviewable).  Moreover, any error in the omission of comparative fault language in questions 1 and 2 of the Special Verdict Form is inconsequential in view of the district court's curative instruction which refers to instruction Nos. 6 and 10 which, in turn, contains a correct statement of law on comparative fault.  The jury was further instructed on comparative fault in instruction Nos. 9 and 12.  In addition, instruction No. 1 directs the jury to consider the

instructions as a whole. We therefore conclude that the jury was not precluded from considering the issue of comparative fault. Moreover, there is no mandate under the Federal Rules or Missouri law that the jury be instructed, in a special verdict form, to view the instructions as a whole if the jury has already been so instructed. The form properly asked the jury to focus at the outset on whether appellants had met their initial burden. Appellants suffered no prejudice from this form of inquiry.

As to the district court's rejection of appellants' proposed curative instruction and the propriety of its own curative instruction, appellants correctly point out that the district court's broad discretion in deciding whether to use a special verdict form does not extend to submitting instructions that mislead, confuse, or improperly state the law. This court has made clear, however, that "'[t]he mere tender of an alternative instruction without objecting to some specific error in the trial court's charge or explaining why the proffered instruction better states the law does not preserve the error for appeal.'"[8] Campbell v. Vinjamuri, 19 F.3d 1274, 1277 (8th Cir. 1994) (Campbell) (quoting Farmland Indus. v. Frazier-Parrott Commodities, Inc., 871 F.2d 1402, 1408 (8th Cir. 1989)). Therefore, we reject their contentions because, while the instruction may be subject to alternative interpretations, it is not plain error.

Appellants' contention that the curative instruction improperly directs the jury's verdict hinges upon the number of "parts" there are to question 2 of the Special Verdict Form. The clearer interpretation of question 2, and certainly the interpretation of the jury, is that question 2 has two parts: one, whether Black & Decker designed the Model 1703 miter saw in a defective manner either because the saw did not have an

---

[8]Before proposing a curative instruction to the district court, appellants stated that the jury "should be given a general response" and "shouldn't be given specific answers." Transcript of Instruction Conference at 50. Assuming that these statements amount to a specific objection, we hold that the district court did not abuse its discretion in giving a less general curative instruction.

automatic brake or because it had a gravity guard that did not protect from below, and two, whether Black & Decker failed to use ordinary care to design the Model 1703 miter saw to be reasonably safe.[9]  This inquiry correctly asks the jury to determine initially whether appellants have met their burden.  We therefore find no error in the district court's curative instruction.

Furthermore, the district court had broad discretion to reject appellants' proposed curative instruction.  We hold that the district court did not abuse its discretion in refusing appellants' proposed curative instruction  In sum, we hold that, as a whole, the jury instructions in the instant case do not misstate Missouri law and are not so misleading and confusing as to constitute plain error.

We also hold that the district court did not err in dismissing appellants' negligent recall claim.  We review de novo a district court's determination of how a forum state's highest court would decide a novel legal issue or cause of action, giving no deference to the district court's interpretation of state law.  See Salve Regina College v. Russell, 499 U.S. 225, 231 (1991); Lindsay Mfg. Co. v. Hartford Accident & Indem. Co.,118 F.3d 1263, 1267 (8th Cir. 1997).

The district court dismissed appellants' negligent recall claim on the ground that there is no such cause of action under Missouri law.  Appellants admit that neither the Missouri Supreme Court nor the Missouri legislature has recognized such a claim; nonetheless, appellants argue that Missouri caselaw supports a negligent recall claim. Appellants assert that the factual allegations in their complaint establish that Black & Decker owed a duty to appellants to carry out its recall program under the CPSA and under Missouri common law because of the reasonable likelihood that injury would

_____

[9]The jury's note that prompted this instruction was based stated that the jury's confusion was based, in part, on "*the two-part aspect of each question.*"  Appellants' Initial Appendix at 95.

occur from its negligent acts or omissions. Appellants apparently base their argument under the CPSA on its general provisions. Appellants also rely on Missouri caselaw that holds that a claim of negligence need only arise out of circumstances in which there is a foreseeable likelihood that a particular act or omission will cause harm or injury. See, e.g., Maryland Heights Leasing v. Mallinkrodt, Inc., 706 S.W.2d 218, 223 (Mo. Ct. App. 1986). For additional support, appellants rely on Iowa and Minnesota cases that have found a post-distribution duty to warn, and on Smith v. Firestone Tire & Rubber Co., 755 F.2d 129, 135 (8th Cir. 1985) (Smith), where this court held that whether a duty to recall exists is a matter of law that must be supported by statute, case law, or the mandate of an appropriate regulatory agency.

In Smith, this court conducted the exact analysis of Missouri law that appellants propose in the instant appeal. Id. at 134-35. Like the instant case, Smith involved a products liability action brought under diversity jurisdiction in which Missouri law governed. In that case, we recognized that, to establish any cause of action based in negligence under Missouri law, a plaintiff must demonstrate that the defendant owed a duty to the plaintiff, breached that duty, through act or omission, and thereby proximately caused the plaintiff's injury. Id. at 135 (citing Virginia D. v. Madesco Inv. Corp., 648 S.W.2d 881, 886 (Mo. 1983) (en banc); Nelson v. Freeman, 537 F. Supp. 602, 607 (W.D. Mo. 1982), aff'd sub nom. Nelson by Wharton v. Missouri Div. of Family Servs., 706 F.2d 276 (8th Cir. 1983)). Furthermore, the court must determine that a duty in fact existed. Smith, 755 F.2d at 135 (citing Hyde v. City of Columbia, 637 S.W.2d 251, 257 (Mo. Ct. App. 1982), cert. denied, 459 U.S. 1226 (1983)).

Applying Missouri law, we held that a manufacturer could not be liable in negligence for failure to recall defective tire rims because the appellants

> provide[d] no statute or case law to support their position that [the manufacturer was] under a legal duty to recall the rims. While such a duty may have existed had the Department of Transportation ordered a

recall, . . . no such notification of defect and remedy order had been given pertaining to these rims. Since no duty to recall was established, a fundamental prerequisite to establishing negligence was absent.

Id. at 135. Accordingly, we held that the district court did not err in rejecting appellants' request to instruct the jury on a negligent recall theory.

Likewise, in the instant case, we hold that there is no indication, by caselaw, statute, or otherwise, that the Missouri Supreme Court would create a common law duty to recall under these circumstances.[10] Moreover, in light of the fact that there is

---

[10]In a recent unpublished opinion, the Missouri Court of Appeals affirmed a jury verdict in a wrongful death action against the manufacturer and installer of a helicopter engine and the owner and operator of the helicopter. Letz v. Turbomeca Engine Corp., No. WD 51446, 1997 WL 727544 (W.D. Mo. Nov. 25, 1997) (Letz) (en banc), reh'g and/or transfer denied, id. (Jan. 27, 1998), cause ordered transferred to Mo. Sup. Ct., id. (Mar. 24, 1998). Among the claims asserted at trial was the claim that the manufacturer and the installer knew of the defect in the engine before installation and, based on a fully informed, cost-based business decision, failed to recall the engine prior to the regularly scheduled overhaul. Id. at *3. The manufacturer and installer appealed, among other things, the submission of the issue of "aggravating circumstances" to the jury and the admission of evidence of the cost of recall. Id. at *1. In affirming the trial court on the condition of remittitur, the Missouri Court of Appeals did not address whether the failure to recall was actionable as a distinct cause of action under Missouri law. Letz is now pending review before the Missouri Supreme Court.

To the extent that Letz tends to establish a cause of action for failure to recall under Missouri law, we note that, in predicting how the Missouri Supreme Court would rule, we may consider, but are not bound by, relevant state precedent, analogous decisions, considered dicta, and any other reliable data. See Aerotronics, Inc. v. Pneumo Abex Corp., 62 F.3d 1053, 1062 (8th Cir. 1995) (holding that, while decisions by the Missouri Court of Appeals may be used as an indication of how the Missouri Supreme Court may rule, we are not bound to follow those decisions). Because of the uncertain nature of this case in view of its particular factual posture, the Missouri Court

-15-

no recognized duty to recall, we hold such a duty cannot arise as a result of Black & Decker's voluntary undertaking to recall certain of its miter saws. Furthermore, Missouri caselaw on failure to warn suggests that, in order for appellants to pursue a negligent recall claim, the defect in the miter saw would have had to exist at the time the product left Black & Decker's control and entered the stream of commerce. See e.g., Mo. Rev. Stat. § 537.760 (providing that product defective must have existed when the product was sold); Welsh v. Bowling Elec. Mach., Inc., 875 S.W.2d 569, 572 (Mo. Ct. App. 1994) (holding that, in failure to warn cases, the alleged defect must have existed when it left the defendant's control and entered the stream of commerce). Thus, with the possible except of appellants' theory of negligent design, appellants' general reliance on Missouri common law fails. Moreover, because there was no CPSA mandate that Black & Decker recall the Model 1703, Type 1 miter saw, appellants' attempt to establish a duty to recall under the CPSA also fails. But cf. Santiago v. Group Brasil, Inc., 830 F.2d 413, 415 (1st Cir. 1987) (distinguishing Smith in part because the plaintiffs alleged that the defendant failed to comply adequately with a CPSA Commission recall order).

Accordingly, we affirm the order of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

of Appeals' decision not to publish its opinion, and the fact that the defect was known at the time of installation, we do not find Letz persuasive. Furthermore, in our judgment, it is unlikely that the Missouri Supreme Court will review the propriety of a failure to recall claim under Missouri law where it was not an issue in the initial appeal.