ciples of law governing attorney liability. *Id.* at 176.

[6] The "exceptional circumstances" test applied in Missouri was discussed at length in *Macke*. The *Macke* court pointed out that an attorney may be liable for a civil conspiracy with his client when he acts beyond his conditional or qualified privilege as an attorney by, for example, committing fraud, collusion or a malicious or intentionally tortious act. *Id.* at 177 (citation omitted). In discussing the consistency of the exceptional circumstances test, as applied in Missouri, with the agency law of other jurisdictions, the *Macke* court noted cases which required that the attorney act for his sole personal benefit rather than the benefit of his client, that he participate actively in a fraud, or that he act with actual malice or a desire to harm. *Id.* at 178 (citations omitted). In a footnote, the *Macke* court noted that "[t]he fact that the attorney has been or will be paid legal fees for representation of the attorney's client does not meet this standard." *Id.* at 178, n. 4 (citation omitted).

 Upon consideration, the Court finds the acts Plaintiff alleges Brown & James committed in furtherance of the "conspiracy" to be merely those any attorney would reasonably perform in the course of representing his client. Further, the only personal benefit Plaintiff alleges Brown & James derived from the conspiracy was "the receipt of fee/wage compensation fees" which, as noted above, is insufficient to demonstrate that Brown & James was acting for its sole personal benefit rather than the benefit of its client. According Brown & James the appropriate privilege to represent its client as it sees fit, the Court finds that, on the face of his Petition, Plaintiff fails to allege any acts or benefits going beyond the ordinary scope of the agent-principal relationship existing between Brown & James and Capitol Indemnity. The Court thus finds that Brown and James was fraudulently joined in this action, and its Motion to Dismiss will therefore be granted.

 Close examination of the Petition similarly reveals that Plaintiff fails to allege any action in furtherance of the conspiracy by Nixon which can be said to have advanced Nixon's sole personal benefit. An agent does not become liable for conspiracy simply because it accepts payment from its principal for acts performed within the scope of the agency, even if the principal's ultimate design is alleged to have been tortious. In reviewing Plaintiff's allegations against Nixon with these standards in mind, the Court finds that they fail to state a claim for civil conspiracy under Missouri law. Defendant Nixon's Motion to Dismiss will therefore be granted as well.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Joint Motion to Dismiss Defendants Brown & James, P.C. and Nixon & Company, Inc. for Fraudulent and Pretensive Joinder (Doc. No. 16) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendants' Motion for Sanctions (Doc. No. 16) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Remand Case to State Court (Doc. No. 11) is **DENIED.**

**Deborah EFTING, natural mother of Cheyenne Davidson, and Farmers Alliance Mutual Insurance Company, Plaintiffs,**

v.

**TOKAI CORPORATION, et. al, Defendants.**

**No. 98–0260–CV–W–9.**

United States District Court, W.D. Missouri, Western Division.

Oct. 29, 1999.

Alex E. Garcia, Barbara A. Radnofsky, Vinson & Elkins, Houston, TX, W. James Foland, Foland & Wickens, P.C., Kansas City, MO, Dwaine M. Massey, Conrad B. Guthrie, Jared I. Levinthal, Vinson & Elkins LLP, Houston, TX, for Plaintiffs.

Spencer J. Brown, Mimi E. Doherty, Deacy & Deacy, LLP, Kansas City, MO, for Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BARTLETT, Chief Judge.

This case stems from a fire that resulted in the death of four year old Cheyenne Davidson. Plaintiffs assert negligence and product liability claims against defendants Tokai Corporation (Tokai) and its wholly-owned subsidiary Scripto–Tokai Corporation (Scripto–Tokai).

The product involved in this case is a butane utility lighter marketed under the name Aim N Flame. Plaintiffs allege that

defects in the design of the Aim N Flame caused the fire that killed Davidson.

Defendants move for summary judgment. Defendants argue that they are entitled to summary judgment because 1) there is no private cause of action for violations of the Consumer Product Safety Act; 2) defendants did not have a duty to recall or retrofit the Aim N Flame; 3) the Aim N Flame is not a hazardous product; 4) defendants did not have a duty to make the Aim N Flame childproof; and 5) plaintiffs fail to state a claim for failure to warn.

## I.

### DEFENDANTS' MOTION TO ADOPT DEFENDANT WAL–MART STORES, INC.'S SUMMARY JUDGMENT MOTION

On March 15, 1999, a former defendant in this case, Wal–Mart Stores, Inc., filed its motion for summary judgment. On March 16, defendants Tokai and Scripto–Tokai filed a Statement of Adoption of Defendant Wal–Mart Stores, Inc.'s Summary Judgment Motion. Then, on March 17, 1999, plaintiffs and Wal–Mart filed a stipulation of dismissal that was granted on March 31, 1999.

█ Local Rule 7.1(f) limits suggestions in support of a motion to fifteen pages. Defendants' suggestions in support of their motion for summary judgment is sixteen pages long. Although defendants were granted leave to exceed the page limitation in Rule 7.1(f) by one page, defendants never sought leave, nor were defendants ever granted leave, for the excess pages created by incorporating Wal–Mart's summary judgment motion. Therefore, I will not consider any of the arguments raised in Wal–Mart's motion for summary judgment.

## II.

### SUMMARY JUDGMENT STANDARD

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, it is the court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Inland Oil and Transport Co. v. United States*, 600 F.2d 725, 727–28 (8th Cir.1979).

If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. *Roberts v. Browning*, 610 F.2d 528, 531 (8th Cir.1979); *United States v. Porter*, 581 F.2d 698, 703 (8th Cir.1978). The summary judgment procedure is not a "disfavored procedural shortcut." Rather, it is "an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). *See also City of Mt. Pleasant v. Associated Elec. Coop., Inc.*, 838 F.2d 268, 273 (8th Cir.1988). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. 317, 106 S.Ct. at 2553.

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the *absence* of genuine issues of material fact. However, the moving party *is not required* to support its motion with affidavits or other similar materials *negating* the opponent's claim. *Id.* (emphasis added).

The nonmoving party is then required to go beyond the pleadings and by affidavits, depositions, answers to interrogatories and

admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* A party opposing a properly supported motion for summary judgment cannot simply rest on allegations and denials in his pleading to get to a jury without any significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The evidence favoring the nonmoving party must be more than "merely colorable." *Id.* 477 U.S. 242, 106 S.Ct. at 2511. When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted).

The inquiry to be made mirrors the standard for a directed verdict: whether the evidence presented by the party with the onus of proof is sufficient that a jury could properly proceed to return a verdict for that party. *Anderson,* 477 U.S. 242, 106 S.Ct. at 2511. Essentially, the question in ruling on a motion for summary judgment and on a motion for directed verdict is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Id.* 477 U.S. 242, 106 S.Ct. at 2512.

### III.

### FACTS

Based on the parties' pleadings, deposition testimony, affidavits, answers to interrogatories, and admissions, the following facts are undisputed or, if disputed and plaintiffs properly presented facts supporting their version of disputed facts, the facts are presented here in the light most favorable to plaintiffs.

In the spring or early summer of 1995, Deborah Efting, Cheyenne Davidson's mother, received an Aim N Flame lighter as a gift. Deborah Efting does not remember reading the instructions and warnings on or with the packaging of the Aim N Flame or on the Aim N Flame itself. Deborah Efting's husband, Perry Efting, never read any warning about the Aim N Flame.

Deborah Efting kept the Aim N Flame above the kitchen counter top on the second shelf of a cabinet. The Aim N Flame was stored there to keep it away from children. At the time, Efting believed that the shelf was inaccessible to Davidson.

During the morning of September 2, 1996, Davidson, who was four years old, was at home with her mother, Deborah Efting, and Perry Efting. Davidson woke Perry Efting, saying that she was hungry. Perry Efting took Davidson downstairs, fixed her a bowl of cereal, and turned on the television. After five to ten minutes, Perry Efting told Davidson that he was going upstairs to lay down. When he left, Davidson was watching cartoons. Perry Efting went upstairs and fell asleep.

While Deborah and Perry Efting slept, Davidson went to the kitchen and, using a chair, climbed onto the kitchen counter. Davidson took the Aim N Flame from the shelf where it was kept and went into her bedroom. Davidson then either moved the on/off switch into the "on" position or pulled the ignition trigger until the switched moved into the "on" position. Bedclothes or other combustible material then caught fire.

Deborah and Perry Efting realized that something was wrong when the smoke alarm on the second floor went off. The first floor rooms were filled with smoke. An intense fire in Davidson's bedroom prevented Deborah and Perry Efting from entering. A neighbor pulled Davidson out of her bedroom through a window.

An investigation by the Springfield, Missouri, Fire Department determined that the fire began in Davidson's first floor bedroom. The fire investigator found a

metal tip inscribed with the words "Aim N Flame." All other sources of the fire (matches, cigarette lighter, etc.) were ruled out.

Warnings were given to Aim N Flame users—some warnings were on the packaging and one was on the lighter itself. From 1994–1995, the following warning was displayed on the front of the Aim N Flame package:

DANGER EXTREMELY FLAMMABLE CONTENTS UNDER PRESSURE READ CAREFULLY ALL WARNINGS AND INSTRUCTIONS ON BACK OF CARD. KEEP AND STORE OUT OF REACH OF CHILDREN

On the back of the Aim N Flame package the following appeared:

| DESIGNED FOR: | BENEFIT FEATURES: |
|---|---|
| *Barbecues ... charcoal or gas grills | *Keeps hands away from flames *Reaches hard-to-light places |
| *Lighting pilot lights | *Safety on/off switch |
| *Candles and hurricane lamps | *Adjustable flame |
| *Fireplaces | *Long lasting |
| *Camping | *Visible fuel supply |

The back of the Aim N Flame package also read:

### WARNING

**Failure to follow instructions may result in burn injury.**

### DANGER

**CONTAINS BUTANE GAS UNDER PRESSURE EXTREMELY FLAMMABLE**
**Do not use near fire, flame or sparks.**

### CAUTION

**Do not puncture, incinerate or expose to temperature from sun or otherwise above 120˝F (49˝C).Be sure flame is extinguished after each use.**
**Do not use to light cigarettes, cigars or pipes.**

### KEEP AWAY FROM CHILDREN

Also, the words **"NOTICE: Always store with slide safety switch in 'OFF' position,"** were on the Aim N Flame package.

For lighters sold in 1995, the following appeared on the Aim N Flame:

**WARNING: Failure to follow instructions can result in burn injury. DANGER: LIGHTER CONTAINS BUTANE GAS UNDER PRESSURE. EXTREMELY FLAMMABLE. Do not use near fire or flame. CAUTION: Do not puncture, incinerate or expose to temperature above 120˙ KEEP AND STORE AWAY FROM CHILDREN! SCRIPTO–TOKAI CORPORATION FONTANA, CA 92337 MADE IN MEXICO**

## IV.

## WHETHER THERE IS A PRIVATE CAUSE OF ACTION UNDER THE CONSUMER PRODUCT PRODUCT SAFETY ACT IS MOOT

Defendants argue that they are entitled to summary judgment on plaintiffs' claim for negligence per se because violations of the Consumer Product Safety Act (CPSA) do not give rise to a private cause of action.

Following resolution of a discovery dispute, plaintiffs were allowed to file a Second Amended Complaint on June 9, 1999. The Second Amended Complaint does not include a claim for negligence per se. Therefore, this issue is moot.

## V.

## DEFENDANTS DID NOT HAVE A DUTY TO RECALL OR RETROFIT THE AIM N FLAME

In Count IX, plaintiffs assert a claim for "negligence and strict liability for failure to recall or retrofit." Defendants argue that "[u]nder the circumstances of this case, there is no reason to believe that the Missouri Supreme Court would create new causes of action and impose upon manufacturers separate duties to recall and retrofit allegedly defective products."

In *Morrison v. Kubota Tractor Corp.,* 891 S.W.2d 422, 423 (Mo.Ct.App.1994), the

driver of a tractor was killed when the tractor rolled over while mowing on the bank of a pond dam. The tractor was not equipped with a roll-over protection system (ROPS). *Id.* at 424. The survivors brought a wrongful death claim alleging, among other things, that the manufacturer was negligent for failing to retrofit the tractor with a ROPS. *Id.* at 429.

The *Morrison* court emphasized the fact that "plaintiff's decedent knew of the existence of ROPS when he purchased the tractor but declined to purchase one and the absence of a ROPS was plain to see." *Id.* at 430. Although it was "unwilling to say that there can never be a duty on a manufacturer to retrofit its products," the *Morrison* court held that under the facts of that case, the manufacturer did not have a duty to retrofit the tractor. *Id.*

In *Horstmyer v. Black & Decker (U.S.), Inc.,* 151 F.3d 765, 767 (8th Cir.1998), the plaintiff was injured when his hand came in contact with a spinning blade of a miter saw. Seven years earlier, the manufacturer had recalled the model of saw that injured plaintiff. *Id.* However, the saw that plaintiff was using at the time of his injury was never made part of the recall. *Id.* Plaintiff contended that the saw was never recalled due to a numbering error in the recall notice. *Id.* at n. 4. Defendant claimed that the saw was not recalled because plaintiff failed to return his warranty card. *Id.*

The *Horstmyer* court concluded that, although there may be a duty to recall in some cases, "there is no indication, by caselaw [sic], statute, or otherwise, that the Missouri Supreme Court would create a common law duty to recall under these circumstances." *Id.* at 773.

Plaintiffs have presented facts showing defendants had notice prior to 1996 that the on/off switch on the Aim N Flame would migrate to the "on" position if the trigger was repeatedly pulled. *See* Canepa depo. at 50–54. In addition, plaintiffs have presented facts showing that defendants were aware that butane could escape from the lighter if the trigger was pulled

while the switch was in the "off" position. Mori depo. at 79–80; 86. However, the Aim N Flame has never been subject to a recall. Merwise depo. at 154–55; Ashley depo. at 150–51.

▪ Based on the *Morrison* and *Horstmyer* decisions, a showing that the defendant had notice of a defect is not enough in itself to create this common law duty.

Plaintiffs argue that the decision of the Missouri Court of Appeals in *Letz v. Turbomeca Engine Corp.,* 975 S.W.2d 155, 178 (Mo.Ct.App.1997) and the Restatement (Third) of Torts § 10 support "the imposition of a duty to recall and/or retrofit."

In *Letz,* the court considered the manufacturer's failure to recall a defective product in the context of whether a punitive damage award was excessive. The court did not address whether there was a common law duty to recall or retrofit.

Section 10, of the Restatement (Third) of Torts, discusses a manufacturer's failure to warn, not whether there is a separate claim for failure to recall or retrofit.

Because there was no duty in Missouri to recall or retrofit the Aim N Flame, defendants' motion for summary judgment on the claim for failure to recall or retrofit (Count ___) will be granted.

## VI.

### DEFENDANTS HAVE FAILED TO ESTABLISH AS A MATTER OF LAW THAT THERE IS ONLY ONE POSSIBLE DEFECT PLAINTIFFS CAN ATTEMPT TO ESTABLISH

Defendants argue that they are entitled to summary judgment on plaintiffs' claims for negligence (Count I), negligently supplying a dangerous instrumentality (Count II), breach of warranty of fitness (Count III), breach of warranty of merchantability (Count IV), breach of express warranty (Count V), strict liability product defect (Count VI), strict liability failure to warn (Count VII); and product liability, negligent manufacture and design (Count VII)

**1012**

because "[t]here is absolutely no evidence in this case that the [Aim N Flame] malfunctioned or that any alleged 'defect' other than that a utility lighter could be used by a fifty month old child, contributed to the tragedy of September 2, 1996." More simply put, defendants' argument is that there are no facts showing that any of the alleged defects, except for the failure to make the Aim N Flame childproof, caused the fire that killed Davidson.

Plaintiffs assert that they have presented facts which raise a reasonable inference that defects other than defendants' failure to childproof the Aim N Flame caused damage in this case.

"Under Missouri law, 'absolute certainty of causation is not required in a product liability case and ... probative facts established by circumstantial evidence and pointing to the desired conclusion with enough certainty to be reasonable and probable is sufficient.' " *Bass v. General Motors Corp.*, 150 F.3d 842, (8th Cir.1998) (quoting *Duke v. Gulf & Western Mfg. Co.*, 660 S.W.2d 404, 410 n. 3 (Mo.Ct.App.1983)) (internal quotation marks omitted). Plaintiffs need only present facts raising a reasonable inference that their injuries resulted from a defect in defendants' product. *Tenbarge v. Ames Taping Tool Systems, Inc.*, 128 F.3d 656, 659 (8th Cir.1997).

Plaintiff presented the deposition testimony of Christine Canepa, former Scripto–Tokai marketing manager for writing instruments, utility lighters, and disposable cigarette lighters, who testified that she was aware of a problem with the on/off switch of the Aim N Flame migrating from the "off" position to the "on" position when the trigger was repeatedly pulled. Canepa depo. at 54. Canepa expressed concern to Norman Merwise, Scripto–Tokai's vice-president of sales and marketing, and Fred Ashley, Scripto–Tokai's operating director, that the on/off switch could migrate, causing the lighter to ignite unintentionally. *Id.*

Plaintiffs also presented a memorandum from Canepa to Jimmy Kurata dated June 29, 1995. Plaintiff did not, however, present deposition testimony identifying the memorandum. Therefore, any factual assertions contained in that memorandum are not properly presented for summary judgment and will not be considered when ruling on this motion.

In addition, plaintiffs presented an affidavit from Dr. John Geremia, Ph.D., in which Geremia stated that "when Cheyenne [Davidson] went under the bed to play with the lighter, the fire happened in one of two ways: Cheyenne repeatedly pumped the trigger with the switch in the 'off' position, thereby releasing gas, causing the safety switch to migrate, and ultimately igniting that gas and other nearby combustibles; or Cheyenne moved the switch from the 'off' to the 'on' position and lit the lighter." Geremia affidavit at 15, ¶ 46.

■ The facts presented by plaintiffs raise a reasonable inference which would allow a reasonable jury to conclude that there was a causal relationship between the fire that killed Davidson and the tendency of the on/off switch to migrate from "off" to "on" with repeated trigger pulls. Therefore, plaintiffs may assert this claim in addition to the allegation that the Aim N Flame was defective because it could be used by a 50–month old child. (Also, *see* discussion in Section VII about child resistance issue.)

Defendants' motion for summary judgment will be denied.

## VII.

**DEFENDANTS DID NOT HAVE A DUTY TO MAKE THE AIM N FLAME LIGHTER CHILDPROOF BUT THE WHEN DEFENDANTS INCLUDED A CHILD–RESISTANT DESIGN FEATURE, THEY WERE REQUIRED TO DESIGN THE CHILD RESISTANT FEATURE SO THAT IT WAS NOT UNREASONABLY DANGEROUS**

When defendants included a child-resistant design feature, they were required to

design the child resistant feature so that it was not unreasonably dangerous.

Defendants argue that they are entitled to judgment as a matter of law on plaintiffs' claim that the Aim N Flame could be operated by a four-year old child. Defendants assert that "there is no duty under Missouri product liability law for a manufacturer to make an adult product child proof." Plaintiffs respond that 1) the cases defendants rely upon are no longer good law; and 2) defendants assumed the duty to make the Aim N Flame child resistant.

Defendants rely on three cases for the proposition that a manufacturer does not have a duty to childproof a product that is intended for adult use. In *Brawner v. Liberty Industries, Inc.,* 573 S.W.2d 376, 378 (Mo.Ct.App.1978), the court held that a product made for adult use is not "defective and unreasonably dangerous solely because it has not been made child-proof." Relying on *Brawner,* the courts in *Sedlock v. Bic Corp.,* 741 F.Supp. 175 (W.D.Mo. 1990) and *Eads v. Bic Corp.,* 740 F.Supp. 1433 (W.D.Mo.1989) reached the same conclusion. In *Sedlock,* the court noted "that Missouri law explicitly holds that manufacturers are not liable for failure to make adult products child proof." 741 F.Supp. at 177. In *Eads,* the court stated that, "as a matter of law, Bic owed no duty to make the lighter childproof." 740 F.Supp. at 1435.

Plaintiffs contend that these cases are no longer good law because the "consumer-expectation test" used by the *Brawner* court is no longer the law in Missouri. Plaintiffs argue that in *Anderson v. F.J. Little Machine Co.,* 68 F.3d 1113, 1116 (8th Cir.1995), the court recognized that "Missouri courts have not adopted the 'consumer-expectation' test in strict liability cases . . . ."

However, plaintiffs have cited no authority for the proposition that Missouri has *rejected* (as opposed to not adopted) the consumer-expectation test for strict liability cases. Instead, *Anderson* and other courts have recognized that Missouri has

not decided whether the "consumer-expectation test" or the "risk-utility test" should be used when defining the term unreasonably dangerous in jury instructions. 68 F.3d at 1116. *See also Drabik v. Stanley–Bostitch, Inc.,* 997 F.2d 496, 506 (8th Cir. 1993).

In this diversity case, I must attempt to predict what law a Missouri court would apply if faced with the issue presented in this case. Because *Brawner* has not been explicitly overruled and because the Missouri Supreme Court has had several opportunities to adopt the risk-utility test over the consumer-expectation test, but has failed to do so, I conclude that a Missouri court would follow *Brawner.*

Plaintiff has, however, successfully distinguished the facts of *Brawner, Sedlock,* and *Eads* from the facts of this case. In each of those cases, the product did not have any type of child resistant design.

In this case, there is testimony that the on/off switch was intended to provide some degree of child resistance.

Norman Merwise, Script–Tokai's Vice–President of Sales and Marketing, testified as follows:

Q. Do you believe that the purpose of the on/off switch—of the safety on/off switch in the Aim 'n Flame is to provide some measure of child resistance?

\* \* \* \* \* \*

A. Yes, I believe it does provide a form of child resistance.

Also, plaintiffs assert that defendants stated that the Aim N Flame was child resistant in literature distributed to retail distributors. The Aim N Flame was included in a brochure entitled "Child Resistant Buyer's Guide." *See* Child Resistant Lighter Buyer's Guide. According to Canepa, who was Scripto–Tokai's marketing manager for writing instruments, utility lighters, and disposable cigarette lighters, defendants expected retailers to rely on the representations contained in the

Child Resistant Buyer's Guide. Canepa depo. at 142–143.

Here, facts have been presented that the design of the on/off switch was not effective in providing child resistance against an appealing feature of the lighter for children, i.e., pulling the trigger.

Plaintiffs' expert witness Dr. Tarald Kvalseth, Ph.D. states in his affidavit that a four year old child could "exert the force required to move the on/off switch of the Scripto–Tokai Aim 'n Flame lighter switch from the 'off' to the 'on' position." Kvalseth affidavit at ¶ 9. Kvalseth also states that "[t]he safety on/off switch is not a child safety device because, as described above, a four year old child has the strength and ability to operate both the switch and the trigger of the lighter." *Id.* at ¶ 12.

▮▮▮ Missouri courts have held that a party may assume a duty even when a duty would not otherwise be imposed. *See Hoover's Dairy, Inc. v. Mid–America Dairymen, Inc.,* 700 S.W.2d 426, 432 (Mo. 1985). When a party does assume a duty, it is held to the standard of using reasonable care. *Id. See also Keenan v. Miriam Foundation,* 784 S.W.2d 298, 303 (Mo.Ct. App.1990) ("From the earliest days of the common law, it has been recognized that a duty may be assumed or undertaken, and when so assumed, the defendant must exercise reasonable care."); *Bowman v. McDonald's Corp.,* 916 S.W.2d 270, 287 (Mo. Ct.App.1995) ("Missouri courts have recognized that a duty may be assumed or undertaken, and when so assumed, a defendant must exercise reasonable care in carrying out the duty.").

▮▮▮ Defendants did not have a duty to make the Aim N Flame childproof. However, once they chose to include a child resistant feature on the Aim N Flame, defendants owed plaintiffs a duty of reasonable care in developing that child resistant design so that it was not unreasonably dangerous.

Therefore, defendants' motion for summary judgment on plaintiff's claim that defendants designed the Aim N Flame's on/off switch to be child resistant and that the on/off switch did not did not make the Aim N Flame child resistant will be denied.

## VIII.

## DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON ALL OF PLAINTIFFS' FAILURE TO WARN CLAIMS

Defendants argue that they are entitled to summary judgment on plaintiffs' claim for failure to warn because "the only 'danger' associated with the [Aim N Flame] in this case is that the product could be misused by a small, unsupervised child." Defendants again rely on the argument that there are no facts showing that any alleged defect, other than failure to make the Aim N Flame childproof, caused the fire that killed Davidson.

As discussed above, facts have been presented that would support a reasonable inference that either the on/off switch migrated to the "on" position when Davidson repeatedly pulled the trigger or that gas accumulated when Davidson pulled the trigger in the "off" position and the gas ultimately ignited causing the fire. Therefore, with respect to plaintiffs' claim that defendants failed to warn that 1) the on/off switch could migrate to "on" when the trigger is pulled; and 2) that the Aim N Flame releases butane when the trigger is pulled with the lighter in the "off" position, defendants' motion for summary judgment will be denied.

However, plaintiffs did not respond to defendants' argument that the Aim N Flame provided adequate warning of the potential danger of allowing an unsupervised child to use the Aim N Flame. Therefore, summary judgment will be granted on plaintiffs' claim that defendants failed to warn that the Aim N Flame could be dangerous when used by an unsupervised child.

## IX.

## CONCLUSION

Accordingly, it is ORDERED that:

1) defendants' Motion for Summary Judgment is granted in part and denied in part;

2) plaintiffs' claim for failure to recall or retrofit (Count IX) is dismissed with prejudice; and

3) plaintiffs' claim for failure to warn that the Aim N Flame was dangerous when used by an unsupervised child is dismissed with prejudice.